[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 470.]

CONLEY ET AL.; NATIONWIDE INSURANCE COMPANIES/NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, APPELLANT, *v.* BROWN CORPORATION OF WAVERLY, INC., APPELLEE.

[Cite as *Conley v. Brown Corp. of Waverly, Inc.*, 1998-Ohio-194.]

*Employer and employee—Liability of employer for intentional tortious conduct— Standing to file suit against employer alleging that employer committed an intentional tort leading to employee's injury, disease, or death.*

1.    An employer is not immune from civil liability for employee injuries, disease, or death caused by the employer's intentional tortious conduct in the workplace, since such conduct necessarily occurs outside the employment relationship. (*Blankenship v. Cincinnati Milacron Chemicals, Inc.* [1982], 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, and its progeny, approved and followed.)

2.    A suit against an employer alleging that the employer committed an intentional tort leading to an employee's injury, disease, or death may be maintained by the employee or his or her legal representative, an assignee of the right of action against the employer, or any other person or entity with a statutory or common-law right to recover against the employer, including a third-party tortfeasor with a statutory or common-law claim for contribution or for indemnification, or the subrogee of the third-party tortfeasor's rights or claims. (*Taylor v. Academy Iron & Metal Co.* [1988], 36 Ohio St.3d 149, 522 N.E.2d 464, overruled.)

(No. 97-1143—Submitted April 21, 1998—Decided August 5, 1998.)

APPEAL from the Court of Appeals for Pike County, No. 96CA583.

————————————

**{¶ 1}** The following relevant matters can be gleaned from the record and from the briefs and supplements of the parties.

**{¶ 2}** In 1992, David Conley worked as a contract laborer for Brown Corporation of Waverly, Inc. ("Brown"), appellee, a business engaged in the operation of machine presses for manufacturing wholesale parts and supplies. In October 1992, Conley was severely injured while operating a machine press at his place of employment. The injuries occurred when the press suddenly and unexpectedly activated while Conley was placing steel sheets into the machine as part of his assigned job duties.

**{¶ 3}** In July 1993, Conley and his wife, Donna Conley, filed a complaint in the Court of Common Pleas of Pike County against Brown and two "John Doe" defendants. This case was assigned No. 228-CIV-93 in the common pleas court. In June 1994, the Conleys filed an amended complaint in case No. 228-CIV-93, naming, as defendants, Brown, Hitachi Zosen Clearing, Inc., IDC Corporation, and Rexcon, Inc. Apparently, Hitachi was the manufacturer of the machine press, and IDC and Rexcon were manufacturers of certain control systems or devices that had been used in connection with the operation of the press. In the amended complaint, David Conley sought recovery against Brown for employer intentional tort. Additionally, he sought recovery against the remaining defendants for products liability. Donna Conley sought recovery for her loss of consortium. In the amended complaint, the Conleys alleged that the defendants were jointly and severally liable for compensatory damages.

**{¶ 4}** In August 1994, the Conleys voluntarily dismissed their action against Brown without prejudice. In 1995, various cross-claims that had been filed by the defendants against Brown were voluntarily dismissed without prejudice, including a cross-claim that had been filed by Rexcon against Brown for contribution. Apparently, at some point, the Conleys also dismissed their claims against IDC and Hitachi, but the case proceeded on the Conleys' claims against Rexcon.

{¶ 5} The Conleys eventually refiled their suit against Brown in August 1995, but did not serve Brown until December 1995. This new case was assigned No. 280-CIV-95 in the common pleas court. Brown was the only defendant named in the action. Additionally, in December 1995, Nationwide Insurance Companies Nationwide Property and Casualty Insurance Company ("Nationwide"), appellant, Rexcon's liability insurance carrier, paid the Conleys $397,500 in settlement of the litigation in case No. 228-CIV-93. In exchange for the payment, the Conleys signed a document entitled "Covenant Not to Proceed," whereby they expressly agreed "to cease suing and not to initiate new legal action" against Rexcon, Nationwide, Brown, and others. As part of the agreement, the Conleys assigned to Nationwide their causes of action against Brown for employer intentional tort and loss of consortium.[1] Also, in December 1995, Nationwide, as subrogee of Rexcon's rights and as assignee of the Conleys' causes of action against Brown, moved to intervene as a plaintiff in case No. 280-CIV-95 to assert claims against Brown for "contribution and/or indemnity." The trial court granted Nationwide's motion to intervene.

{¶ 6} Thereafter, on January 24, 1996, Nationwide, as an intervening plaintiff in case No. 280-CIV-95, filed a complaint against Brown. Subsequently,

---

1. The "Covenant Not to Proceed" was signed by the Conleys and by their attorney. The agreement provides, in part:

"[W]e, DAVID CONLEY and DONNA CONLEY, individually and as husband and wife do hereby acknowledge receipt of [$397,500] which amount has been accepted as sole consideration for their covenant to cease suing and not to initiate new legal action against [*inter alia*, Rexcon, Nationwide, Brown] or any other person, corporation, association or partnership which might be charged with responsibilities for damages to the Undersigned, and the consequences flowing therefrom, resulting, or to result, or which might result from the accident subject of the action filed by David Conley and Donna Conley known as Case Number 228-CIV-93 in the Court of Common Pleas, Pike County, Ohio and for which the Undersigned claims the said persons or parties are legally liable in damage; but which legal liabilities and damages have been disputed and denied; David Conley and Donna Conley hereby assign their claims for damages set forth in the complaint in Pike County Court of Common Pleas case number 280-CIV-95 to Nationwide * * *[.]"

the Conleys dismissed their action against Brown in case No. 280-CIV-95,[2] and also dismissed their action against Rexcon in case No. 228-CIV-93.

{¶ 7} In its complaint in case No. 280-CIV-95, Nationwide set forth the following relevant allegations and prayer for relief:

"8. [Brown] did not formally instruct or train Mr. Conley in the safe operation of any particular press * * * [including the LP5 press he was operating at the time of his injury].

"9. The control system activation devices [manufactured and designed by Rexcon] of the LP5 press which Mr. Conley was operating at the time of his injury had been altered by [Brown], or [Brown] knew of their alteration.

"10. [Brown] violated the standards of the Occupational Safety and Health Administration by the manner in which it installed or used the control system activation devices.

"11. [Brown] failed to install safety devices necessary for the safe operation of the LP5 press or used said press knowing that such safety devices had not been installed or were not functioning.

"12. [Brown] was aware of the dangerous conditions * * *; [Brown] knew that * * * Mr. Conley * * * was substantially certain to be harmed; and [Brown], under such circumstances and with such knowledge, did act to require Mr. Conley to continue to perform the dangerous task of operating the LP5 press.

"13. As a direct and proximate result of [Brown's] actions or failure to act, Mr. Conley sustained * * * [severe and debilitating injuries].

---

2. The notice of dismissal in case No. 280-CIV-95 states:

"David A. Conley and Donna K. Conley hereby give notice that they dismiss their within actions against the Defendant, Rexcon, Inc., with prejudice, pursuant to [Civ.R. 41(A)].

"The claims of [Nationwide] against the Defendant, Rexcon, Inc., shall remain pending."

Rexcon was not a defendant in case No. 280-CIV-95. Brown was the only named defendant in that case. Thus, it appears that the above-quoted notice of dismissal was intended to dismiss the Conleys' actions against *Brown* — *i.e.*, the reference to *Rexcon* in the notice of dismissal was an error. In any event, the Covenant Not to Proceed appears to have required the Conleys to dismiss their complaint against Brown.

"14. In Case No. 228-CIV-93, in Pike County, Ohio, [the Conleys] sued, among others, Rexcon, for the injuries and damages caused the Conleys as a result of [the personal injuries sustained by Mr. Conley].

" * * *

"16. During the litigation and prior to judgment, Nationwide, on behalf of Rexcon, entered into a settlement agreement with [the Conleys] * * *.

"17. Pursuant to the terms of the agreement, in consideration of $397,500.00, [the Conleys] released all claims arising out of the accident, subject of Case No. 228-CIV-93 against Defendant, [Brown] and Rexcon.

"18. The consideration of $397,500.00 which Nationwide paid * * * is in excess of Rexcon's proportionate share of the common liability of Rexcon and [Brown].

"19. Pursuant to [former R.C. 2307.31(C)], Nationwide is subrogated to Rexcon's right of contribution from [Brown] to the extent of the amount it paid in excess of Rexcon's proportionate share of the common liability.

"WHEREFORE, [Nationwide] demands judgment against [Brown] for $397,500.00 or, in the alternative, that the Court cause the common liability of Rexcon and [Brown] to be apportioned and order judgment to Nationwide in the amount equal to [Brown's] proportionate share of the common liability * * *."

{¶ 8} Brown filed an answer to Nationwide's complaint and asserted, as one of its defenses, that Nationwide's claims were "barred by the Ohio Workers' Compensation laws." Following a period of discovery, Brown moved for summary judgment on the merits of Nationwide's claims. However, during a May 1996 pretrial conference, a question arose as to whether Nationwide could maintain the action, since Brown's liability to Nationwide (if any) was predicated on Brown's alleged activities in having committed an employer intentional tort. Specifically, at the pretrial conference, counsel for Nationwide raised the issue whether *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 522 N.E.2d 464, was, as

an initial matter, dispositive of Nationwide's claims. Following the pretrial conference, Brown filed a "supplemental memorandum" in support of its motion for summary judgment, claiming that Nationwide's suit was barred by *Taylor*. Nationwide responded to the supplemental memorandum.

{¶ 9} On July 8, 1996, the trial court, relying on *Taylor*, dismissed Nationwide's entire complaint, finding that Nationwide had no standing to pursue an employer intentional tort claim against Brown. The trial court never reached the issues that had been raised by Brown in its original motion for summary judgment on the merits of Nationwide's claims.

{¶ 10} On appeal, the court of appeals, by a divided vote, affirmed the judgment of the trial court. The court of appeals' majority held that *Taylor* barred Nationwide's suit, stating:

"Nationwide sought to recover on three theories: (1) contribution; (2) indemnification; (3) assignment of the Conleys' intentional tort claim to Nationwide. Nationwide stands in the place of the third-party tortfeasor Rexcon. We find that each of Nationwide's theories attempts to assert the Conleys' intentional tort claim against Brown. *Taylor* holds at paragraph one of the syllabus that a third-party tortfeasor has no standing to assert an employee's intentional tort claim against an employer. We therefore reluctantly conclude that the Supreme Court's decision in *Taylor* bars all of Nationwide's claims because Nationwide has no standing to raise an employee's intentional tort claim against an employer. * * *

"Our reluctance to follow *Taylor* is based on * * * [the] well-reasoned dissent [in *Taylor*] as well as policy concerns. The [*Taylor*] majority's rationale for finding that no standing exists for a third-party tortfeasor is less than convincing. We believe that the immunity provided to employers by workers' compensation law has no place in an intentional tort analysis. * * *

"If this were an issue of first impression, our balance would weigh in favor of [allowing] contribution and indemnity and encouraging settlements for injured victims. * * * We would also find that the immunity provided to complying employers by workers' compensation is irrelevant when an intentional tort is asserted. However, the Ohio Supreme Court has spoken on this issue and we, as an inferior court, must adhere to the Supreme Court's position. We therefore affirm the judgment of the trial court. The Supreme Court's decision in *Taylor* bars Nationwide's action."

{¶ 11} Conversely, Judge Harsha of the court of appeals, in a separate dissenting opinion, concluded that *Taylor* did not mandate affirmance of the trial court's judgment in this case. Specifically, Judge Harsha argued that this court's holding in *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus (an intentional tort committed by an employer against an employee necessarily occurs outside the scope of the employment relationship), represented a repudiation of *Taylor*'s rationale that the workers' compensation statutes insulate an employer from all common-law claims of liability. Thus, Judge Harsha determined that *Taylor* had been overruled *sub silentio* in *Brady.* Additionally, Judge Harsha concluded that Nationwide should have been allowed to proceed "on the assignment theory," *i.e.*, as assignee of the Conleys' claims against Brown.

{¶ 12} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Arter & Hadden* and *Irene C. Keyse-Walker; Mollica, Gall, Sloan & Sillery Co., L.P.A.*, *Steven T. Sloan* and *James D. Sillery*, for appellant.

*Lindhorst & Dreidame* and *James M. Moore*, for appellee.

_____

**DOUGLAS, J.**

{¶ 13} The case at bar presents us with an excellent opportunity to revisit the holdings in *Taylor*, 36 Ohio St.3d 149, 522 N.E.2d 464, and to expressly overrule *Taylor* as an anomaly of Ohio law. For the reasons that follow, we reverse the judgment of the court of appeals, vacate the judgment of the trial court, and remand this cause to the trial court for further proceedings.

{¶ 14} In *Taylor*, Luke Scargill and Bobby Lee Taylor were employees of a metal manufacturing concern known as Alumax, Inc. Scargill was injured and Taylor was killed as a result of an explosion that occurred while aluminum scrap was being fed into a crusher machine at Alumax. Scargill and the administrator of Taylor's estate filed suit against Academy Iron & Metal Company ("Academy Iron"), the supplier of the aluminum scrap. The plaintiffs sought recovery against Academy Iron for products liability. Academy Iron then filed a third-party complaint against Alumax, alleging that Scargill's personal injuries and Taylor's death had been caused by the intentional tortious acts of the employer. The third-party complaint sought indemnification from Alumax to Academy Iron for any damages for which Academy Iron was found to be liable in the underlying actions of Scargill and Taylor.

{¶ 15} Alumax moved to dismiss the third-party complaint for failure to state a claim. Academy Iron later sought leave to file an amended third-party complaint to add a claim for contribution. The amended third-party complaint was filed along with the motion for leave to amend. Thereafter, the trial court dismissed Academy Iron's third-party complaint, apparently holding that Academy Iron had no standing to bring an action against Alumax due to the immunity provided to complying employers under R.C. Chapter 4123, Ohio's Workers' Compensation Act. The dismissal of the third-party complaint (in which Academy Iron had asserted only a right to indemnification) implicitly disposed of the claim for contribution that Academy Iron had attempted to assert in its amended third-party complaint.

{¶ 16} Academy Iron settled the claims in the underlying actions by Scargill and the administrator of Taylor's estate, but appealed the dismissal of the third-party complaint. On appeal, the court of appeals in *Taylor* affirmed the judgment of the trial court, finding that the third-party complaint was precluded by former R.C. 4121.80. Upon further appeal, this court, by a divided (five-to-two) vote, affirmed the judgment of the court of appeals.

{¶ 17} At the outset of this court's decision in *Taylor,* the *Taylor* majority noted that, pursuant to Section 35, Article II of the Ohio Constitution and R.C. 4123.74, employers who comply with Ohio's workers' compensation laws are immune from damages for employee injuries that arise in the course of the employment. *Id.* at 150-152, 522 N.E.2d at 466-467. The majority observed that "[a]s these provisions [*i.e.*, Section 35, Article II and former R.C. 4123.74] explicate, the General Assembly, in carrying out its constitutional mandate and adopting a workers' compensation law, provided complying employers with immunity from damages for employee injuries that arise in the course of employment." *Id.* at 152, 522 N.E.2d at 467. The *Taylor* majority also noted that an employer is not immune from damages for employee injuries caused by the intentional tortious conduct of the employer, since such conduct falls outside the scope of employment and workers' compensation law. *Id.*, citing *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572. However, following a brief discussion of the holding in *Blankenship*, the court in *Taylor* found that Academy Iron, which the court labeled a "third-party tortfeasor," lacked standing to pursue the third-party complaint for indemnification. *Id.* at 152-153, 522 N.E.2d at 467-468.

{¶ 18} The *Taylor* court reached its conclusion on the issue of standing based on a single statement in *Blankenship* that " '*an employee* may resort to a civil suit for damages.' " (Emphasis added.) *Taylor* at 152, 522 N.E.2d at 467, quoting *Blankenship* at 613, 23 O.O.3d at 508, 433 N.E.2d at 576. Specifically, the *Taylor*

majority interpreted that statement as barring suit by anyone other than the employee or the employee's legal representative. *Id*. at 152, 522 N.E.2d at 468. Thus, the court in *Taylor* concluded that third-party tortfeasors have no standing to bring a civil suit against an employer "alleging that the employer committed intentional torts leading to an employee's work-related death, disease, or injury." *Id*. at 153, 522 N.E.2d at 468. The *Taylor* court also attempted to bolster its conclusion in this regard based on the immunity granted to complying employers under Ohio's workers' compensation law. *Id*. at 150-153, 522 N.E.2d at 466-468. Additionally, the court went on to hold that Academy Iron could not recover from Alumax on any theory of implied or equitable indemnification, since Alumax had never expressly waived immunity from suit stemming from Section 35, Article II of the Ohio Constitution and R.C. 4123.74. *Id*. at 153-154, 522 N.E.2d at 468-470. Therefore, the court in *Taylor* held, at paragraphs one through three of the syllabus:

"1. Only an employee or his legal representative, not a third-party tortfeasor, may bring a civil suit against an employer alleging that the employer committed an intentional tort leading to an employee's work-related death, disease, or injury. (*Blankenship v. Cincinnati Milacron Chemicals, Inc*. [1982], 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 508, 433 N.E.2d 572, 577, certiorari denied [1982], 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110, followed.)

"2. A third-party tortfeasor has no standing to bring an indemnification claim against an employer, who is acting in compliance with the Ohio workers' compensation law, for damages suffered by an employee in the course of or arising out of his employment.

"3. Relief from common-law liability under the Workers' Compensation Act extends to cases in which a third-party tortfeasor, having paid damages to an employee or his estate, seeks indemnity from the employer on the ground that the liability of the employer is primary or active and the liability of the third-party tortfeasor is secondary or passive."

**{¶ 19}** The dissent in *Taylor* pointed out an array of problems and inconsistencies with the rationale and holdings of the majority opinion in that case. *Taylor*, 36 Ohio St.3d at 155-163, 522 N.E.2d at 470-477 (Douglas, J., dissenting). The dissent noted, among other things, that the majority in *Taylor* had misused a statement from *Blankenship* to reach a conclusion that was absolutely inconsistent with the underpinnings of *Blankenship* and its progeny. *Taylor* at 157-158, 522 N.E.2d at 472-473. The *Taylor* dissent took issue with the majority's reliance on the immunity provided to complying employers under Ohio's Workers' Compensation Act, and suggested that it should now be clear "that intentional misconduct by an employer which results in an injury to his employee is outside the scope of the Workers' Compensation Act and that the employer in such cases is not entitled to the protections afforded by the Act." *Id*. at 157-158, 522 N.E.2d at 472. Likewise, the dissent in *Taylor* noted that "[i]f the conduct of [Alumax] was indeed intentional, an assumption that the majority acknowledges must be made, then the protections of the workers' compensation system have no relevance whatsoever." *Id*. at 158, 522 N.E.2d at 472. The dissent concluded that Academy Iron's amended third-party complaint had stated a claim for contribution under former R.C. 2307.31, as well as a claim for indemnity. *Id.* at 157-159, 522 N.E.2d at 471-473. Additionally, the dissent in *Taylor* went on to address the constitutionality of former R.C. 4121.80 (an issue not decided by the *Taylor* majority), and concluded that the statute represented an invalid exercise of legislative authority. *Id*. at 161-162, 522 N.E.2d at 475-476.

**{¶ 20}** The following passage from the *Taylor* dissent dealt with issues concerning former R.C. 4121.80, but the passage adequately summarizes the rationale of the entire dissent that employers have no immunity or special protection from civil liability for employee injuries that are caused, in whole or in part, by the intentional tortious conduct of the employer:

"Injuries resulting from an employer's intentional torts, even though committed at the workplace, are utterly outside the scope of the purposes intended to be achieved by Section 35 [Article II of the Ohio Constitution] and by the [Workers' Compensation Act]. *Such injuries are totally unrelated to the fact of employment.* When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim. If the victim brings an intentional tort suit against the tortfeasor, it is a tort action like any other. The employer has forfeited his status as such and all the attendant protections fall away." (Emphasis *sic*.) *Id*., 36 Ohio St.3d at 162, 522 N.E.2d at 476 (Douglas, J., dissenting).

{¶ 21} In *Brady*, 61 Ohio St.3d 624, 576 N.E.2d 722, this court adopted the rationale of the above-quoted passage from the *Taylor* dissent in holding that former R.C. 4121.80 was, in fact, unconstitutional. *Brady* at 634, 576 N.E.2d at 729, quoting *Taylor* at 162, 522 N.E.2d at 476 (Douglas, J., dissenting). *Brady* recognized that employer intentional torts "will always take place outside" the employment relationship. *Brady* at 634, 576 N.E.2d at 729. *Brady* does not, however, expressly or impliedly overrule *Taylor*. The constitutionality of former R.C. 4121.80 was not addressed by the *Taylor* majority, and *Brady* did not address the issue whether a third-party tortfeasor has standing to bring an action against an employer for intentionally tortious conduct that injures an employee. Nevertheless, *Brady* does effectively repudiate the rationale of *Taylor,* insofar as *Taylor* was predicated on the theory that workers' compensation statutes can insulate an employer from common-law liability for damages caused by the employer's intentional tortious conduct in the workplace. Specifically, *Brady*, like the dissent in *Taylor*, recognizes that an intentional tort committed by an employer against an employee necessarily occurs outside the scope of the employment relationship and,

thus, outside the realm of any protections afforded to complying employers by Ohio's workers' compensation law. *Brady* at paragraph one of the syllabus.

{¶ 22} To apply *Taylor* in the case at bar would preclude Nationwide, as subrogee of the rights of a "third-party tortfeasor," or as assignee of the Conleys' claims, from maintaining suit against Brown for Brown's alleged activity in having committed an intentional tort in the workplace and having caused or contributed to the injuries sustained by David Conley. This is so, of course, because *Taylor* holds, among other things, that "[o]nly an employee or his legal representative, not a third-party tortfeasor, may bring a civil suit against an employer alleging that the employer committed an intentional tort leading to an employee's work-related death, disease, or injury." *Id.*, 36 Ohio St.3d 149, 522 N.E.2d 464, at paragraph one of the syllabus. Nationwide is neither the "employee" nor the employee's "legal representative" within the meaning of *Taylor.* Rather, Nationwide is a "third-party tortfeasor," insofar as Nationwide stands in the place of Rexcon as subrogee of Rexcon's rights against Brown. Furthermore, according to the holdings and rationale of *Taylor*, Nationwide would have no standing to maintain claims against Brown because of the immunity conferred upon complying employers under Ohio's Workers' Compensation Act.

{¶ 23} However, upon a careful review of *Taylor*, the dissent in *Taylor*, and our decision in *Brady*, it is now absolutely clear to us that *Brady* and the dissent in *Taylor* are consistent with Ohio law and the case of *Blankenship* and its progeny, whereas the majority opinion in *Taylor* is not. We find that *Taylor* was bad law when it was first decided, and that it remains bad law today. The rationale in *Taylor* for finding a lack of standing for "third-party tortfeasors" is, as the court of appeals' majority recognized, "less than convincing." Employer immunity under Ohio's Workers' Compensation Act has no relevance whatsoever where, as here, the employer has allegedly committed an intentional tort against an employee. Because employer intentional torts "will always take place outside" the employment

relationship (*Brady*, 61 Ohio St.3d at 634, 576 N.E.2d at 729), workers' compensation law has no connection with suits alleging an employer intentional tort.  We can perceive of no legitimate reason why Brown, simply because it is an employer, should be absolved from civil liability to Nationwide if, in fact, an intentional tort was committed.  An employer who commits an intentional tort against an employee in the workplace is to be treated the same as other persons or entities that may be called upon to answer for the injurious consequences of their own tortious conduct.

**{¶ 24}** Accordingly, in keeping with the rationale of *Blankenship*, 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, and its progeny, we now hold that an employer is not immune from civil liability for employee injuries, disease, or death caused by the employer's intentional tortious conduct in the workplace, since such conduct necessarily occurs outside the employment relationship.  Additionally, we hold that a suit against an employer alleging that the employer committed an intentional tort leading to an employee's injury, disease, or death may be maintained by the employee or his or her legal representative, an assignee of the right of action against the employer, or any other person or entity with a statutory or common-law right to recover against the employer, including a third-party tortfeasor with a statutory or common-law claim for contribution or for indemnification, or the subrogee of the third-party tortfeasor's rights or claims. *Taylor* is therefore overruled.

**{¶ 25}** In the case at bar, Nationwide's status as subrogee of Rexcon's rights, and as assignee of the Conleys' claims, clearly provides the basis for Nationwide's interest and standing to maintain suit against Brown for all or part of the proceeds that have been paid by Nationwide to the Conleys on behalf of Rexcon. Nationwide, as assignee of the Conleys' causes of action for intentional tort, is entitled to assert *claims* for full recovery against Brown and, also, as subrogee of

14

Rexcon's right, if any, to indemnification, including implied or equitable indemnification of the type at issue in *Taylor*, 36 Ohio St.3d 149, 522 N.E.2d 464.

{¶ 26} Moreover, insofar as Nationwide's complaint was based on an asserted right to contribution, we find that former R.C. 2307.31 and 2307.32(C) (now R.C. 2307.32 and 2307.33[C]) provided a clear basis for Nationwide's interest and standing to maintain its claims against Brown. Former R.C. 2307.31(A) provided, in part:

"[W]here two or more persons are jointly and severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than his proportionate share of the common liability, and his total recovery is limited to the amount paid by him in excess of his proportionate share. No tortfeasor is compelled to make contribution beyond his own proportionate share of the common liability. There is no right of contribution in favor of any tortfeasor who intentionally has caused or intentionally has contributed to the injury or loss to person or property or the wrongful death."

{¶ 27} Former R.C. 2307.31(B) provided that a tortfeasor who entered into a settlement with a claimant was not entitled to recover contribution from another tortfeasor whose liability was not extinguished by the settlement. Former R.C. 2307.31(C) permitted a liability insurer that discharged the obligation of a tortfeasor to be subrogated to the tortfeasor's right of contribution "to the extent of the amount it has paid in excess of the tortfeasor's proportionate share of the common liability." Former R.C. 2307.31(G) and 2307.32(C) permitted enforcement of the right to contribution by separate action.

{¶ 28} Here, Nationwide settled with the Conleys on behalf of Rexcon. The Conleys assigned claims to Nationwide as part of the settlement. The covenant obtained by Nationwide in connection with the settlement may be viewed as having

extinguished Brown's liability, if any, to the Conleys. Nationwide may therefore be entitled to contribution from Brown to the extent of the amount Nationwide has allegedly paid in excess of Rexcon's proportionate share of the common liability of Brown and Rexcon.

{¶ 29} Nevertheless, Brown protests that *Taylor* has the effect of advancing important public policy interests and that *Taylor* should be preserved to bar claims such as those advanced by Nationwide. Specifically, Brown argues that "[i]n its decision in *Taylor*, *supra*, this Court determined that employer intentional tort claims are personal to the employee. If the employee chooses not to pursue such a claim, no one else can do so. That decision provides an important check on frivolous lawsuits mounted by opportunists and, thus, satisfies policy concerns raised by the availability of an employer intentional tort theory." However, the solution to such "frivolous" lawsuits is in the use of a Civ.R. 56 summary judgment motion challenging the merits of the claims or, perhaps, through the use of Civ.R. 11. The appropriate solution is not (and cannot be) to bar the courthouse door to possibly meritorious claims of intentional tort.

{¶ 30} Brown also argues that *Taylor* is consistent with the wishes of the General Assembly "to rein in, not expand, employer intentional tort as a theory of recovery by injured workers beyond the workers' compensation system." Brown's argument concerning the desires of the General Assembly is apparently based on R.C. 2745.01 and former R.C. 4121.80. However, former R.C. 4121.80 was struck down in *Brady*, 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph two of the syllabus, as an invalid exercise of legislative authority.[3] Additionally, as Brown readily concedes, R.C. 2745.01, which became effective November 1, 1995, is not

---

3. We note, in passing, that the Court of Appeals for the Third Appellate District recently determined that R.C. 2745.01 is unconstitutional. *Johnson v. BP Chemicals, Inc*. (Nov. 18, 1997), Allen App. No. 1-97-32, unreported, 1997 WL 729098, discretionary appeal and cross-appeal allowed (1998), 81 Ohio St.3d 1500, 691 N.E.2d 1061.

applicable in this case and, thus, we refrain from any further comment concerning that statute or the expression of legislative intent accompanying the enactment.

{¶ 31} Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals, vacate the judgment of the trial court, and we remand this cause to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the judgment and syllabus only.

————————————

**LUNDBERG STRATTON, J., concurring in judgment and syllabus only.**

{¶ 32} By this decision, we have not determined the underlying issue of whether an intentional tort in fact occurred. Brown alleges that this is only a products liability case and that the intentional tort action was filed to obtain discovery in the products liability case. These are issues that remain for the trial court to resolve before the issue of contribution or indemnity can be reached.

MOYER, C.J., concurs in the foregoing opinion.

————————————