DECISION
Larry Keller Jr., plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas. The trial court granted a motion for summary judgment in favor of Northwest Conduit Corporation, defendant-appellee. We reverse and remand.
On August 21, 1996, appellant and co-worker, Robert Miller, were injured when they were struck by a jolt of electricity while working inside a metal enclosed electrical transformer. Appellant and Miller were employees of appellee, and were within the course and scope of their employment at the time of the accident. Their foreman at the time of the accident was Raymond Stickdorn. Appellant explained in a deposition that he and Miller were trying to install two pipes through the base of a transformer in order to allow underground wires to be connected to the transformer. To accomplish this, they needed to remove two existing pipes inside the transformer by using a jackhammer.
The transformer box was approximately five feet tall, six to seven feet wide, and two to three feet deep. The transformer box had two compartments with a barrier that separated the two compartments. In order to allow appellant and Miller to work inside the transformer box, a bolt for the transformer's doors had to be cut off with a bolt cutter. Appellant and Miller were told to "jackhammer the two pipes in there out to bring our two pipes up." Appellant held and positioned the bottom of the jackhammer while Miller did the actual "jackhammering." Because of the small amount of space in which they had to work, appellant stood outside the box while Miller stood with one foot on the floor of the transformer and with one foot outside the box. Approximately a minute or two after they had finished using the jackhammer and while they were getting ready to take the jackhammer out of the transformer box, an explosion occurred. Appellant testified that he had not touched anything inside the box.
On August 12, 1998, appellant filed a complaint against appellee alleging that the actions of appellee "constitute an act committed by an employer in which the employer intentionally injures or causes injury to an employee." On May 19, 1999, appellee filed a motion for summary judgment. Appellee argued that Stickdorn "had no intention to hurt them, or reason to believe that an accident was substantially certain to occur. The arcing of the electricity through the concrete dust was both unfortunate and unanticipated." (Emphasis sic.)
On October 5, 1999, the court sustained appellee's motion for summary judgment. The court stated in its opinion: "[w]hen considering the surrounding circumstances and the evidence in [a] light most favorable to [appellant], the Court finds that a reasonable jury could not conclude that [appellee] had actual knowledge that harm was substantially certain to result." Appellant appeals this decision and presents the following assignment of error:
 THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE WHERE THE RECORD REVEALED GENUINE ISSUES OF MATERIAL FACT ON THE ELEMENTS OF INTENTIONAL TORT.
Appellant argues in his sole assignment of error that the trial court erred when it granted appellee's motion for summary judgment. Appellant contends that sufficient evidence was presented to show that appellee, through Stickdorn, had actual knowledge that the proximity of the jackhammer to the energized components of the transformer had the substantial certainty of electrocution.
Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Rodgers v. Custom Coach Corp. (June 22, 2000), Franklin App. No. 99AP-1167, unreported.
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. Applied Cos.
(1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Hannah v.Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Baker v. The Buschman Co. (1998),127 Ohio App.3d 561, 566.
Ohio's workers' compensation system is based on the premise that an employer is protected from a suit for negligence in exchange for compliance with the Workers' Compensation Act which:
 * * * operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability. Blankenship v. Cincinnati Milacron Chemicals (1982), 69 Ohio St.2d 608, 614.
However, an employer is not immune from civil liability for employee injuries, disease, or death caused by the employer's intentional tortious conduct in the workplace, since such conduct necessarily occurs outside the employment relationship. Conley v.Brown Corp. of Waverly, Inc. (1998), 82 Ohio St.3d 470, 479. Therefore, workers who have been injured as a result of intentional torts by employers are not required to seek redress from the workers' compensation system. Bunger v. Lawson Co.
(1998), 82 Ohio St.3d 463, 466.
The Ohio Supreme Court has stated:
 [I]n an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee. Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph seven of the syllabus.
One of the common law elements of intentional tort is "intent," which has been defined in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus:
 [I]n order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Since a plaintiff must satisfy all three prongs, a failure of proof with respect to any one prong renders immaterial any disputes of fact with respect to the other prongs. Timmons v.Marketing Services by Vectra, Inc. (Nov. 18, 1999), Franklin App. No. 99AP-272, unreported, discretionary appeal not allowed (2000),88 Ohio St.3d 1435. Mere knowledge and appreciation of a risk does not show intent on the part of the employer. Cross v.Hydracrete Pumping Co., Inc. (1999), 133 Ohio App.3d 501, 507. It is also important to note that "in the arena of intentional tort, it is an `actual knowledge' standard. What a reasonable person should have known is not sufficient." Burkey v. Teledyne FarrisEngineering (June 30, 2000), Tuscarawas App. No. 1999AP030015, unreported.
Concerning the first prong of the Fyffe test, appellant presented an affidavit from Robert Paulus, a professional engineer with a Bachelor of Science degree in electrical engineering. Paulus stated that the transformer appellant and Miller were working on handled 13,200 volts of electricity, and that the national electric code provides that access to an enclosure containing voltage over 600 volts should be permitted only for "qualified persons." When asked if there were things in the transformer appellant and Miller were trying to "stay away from," appellant answered: "Yeah, everything." Appellant agreed with the statement that before they began to jackhammer, Stickdorn, appellant's foreman on the date of the accident, told them "to be careful."
In his deposition, Stickdorn agreed with the question that "it [was] your understanding that inside these transformers there's the potential at least to be shocked or electrocuted." He also agreed with the statement "that jackhammering around electrical components can be a dangerous practice." He also stated that he knew that the transformer had high-voltage electricity inside of it. Additionally, Stickdorn, appellant, and Miller were aware that the electricity to the transformer had not been turned off and that the transformer was active. In fact, Stickdorn asked for the electricity to be shut off from the transformer because "[t]here's potential danger any time you're working around stuff." After construing this evidence in appellant's favor, we find that appellant presented sufficient evidence to show that an issue of fact exists concerning whether appellee, through Stickdorn, had knowledge of the existence of a dangerous process, procedure, instrumentality or condition within the transformer.
Concerning the second prong of the Fyffe test, Paulus stated in his affidavit that he was familiar with 13,200 volt to 480 volt wire power transformers such as the one involved in the present case. Paulus also stated that it "is common knowledge of all contractors that installations such as this provide a `maintenance window' when power can be shut down so that work such as jackhammering can be done without risk of electrocution." Paulus also stated that:
 Electricity arcs at the rate of 1000 volts to the inch. Based upon an arithmetic formula, there were 7600 volts of electricity to ground in the transformer primary compartment in question. This means that electricity would arc 7.6 inches from the transformer primary bushing and no grounded object should have been nearer than that distance so long as the transformer was powered.
* * *
 It is my opinion that everyone in the construction industry knows that if a worker is required by his employment to operate a jackhammer within a few inches of a live bushing or lightning arrestor of a transformer, which is the case here, * * * harm will be a substantial certainty. In other words, a worker who is required to jackhammer within a few inches of a live part of a transformer operating at 13,200 volts line to line and 7,600 volts line to ground such as this is substantially certain to be electrocuted.
Stickdorn testified that he was unaware of the possibility of arcing occurring in the present case. However, Stickdorn did testify that he knew when working near an overhead power line, there is a possibility that if a track hoe gets too close to the power line, electricity can "arc over" even though the hoe doesn't make contact with the line.
Appellee argues that Stickdorn "had no intention to hurt them, or reason to believe that an accident was substantiallycertain to occur. The arcing of the electricity through the concrete dust was both unfortunate and unanticipated." (Emphasissic.) This statement may be true. However, we are required to construe the evidence most strongly in favor of appellant. Therefore, after combining Stickdorn's knowledge of the possibility of high voltage arcing, with Paulus' statements that: (1) "everyone in the construction industry knows" about the hazards of jackhammering within a few inches of live high voltage electrical components of a transformer; and (2) a worker required to jackhammer within a few inches of such components "is substantially certain to be electrocuted," we find that sufficient evidence was presented to create a question of fact whether appellee, through Stickdorn, had knowledge that if appellant was subjected to jackhammering within the transformer, the harm that occurred to appellant was a substantial certainty. Additionally, evidence was presented supporting the third prong of Fyffe that appellee required appellant to perform the dangerous task.
Accordingly, we find that appellant presented sufficient evidence satisfying each of the three prongs of the Fyffe test. Therefore, we find that the trial court erred in sustaining appellee's motion for summary judgment. Appellant's assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings consistent with this opinion.
KENNEDY, J., concurs, LAZARUS, J., dissents.