OHIO SAVINGS BANK, Plaintiff,

v.

MANHATTAN MORTGAGE CO., INC.,
Defendant/Third Party Plaintiff,

v.

PMI Mortgage Services Co. et al.,
Third Party Defendants.

No. 06 CIV. 5667(CM).

United States District Court,
S.D. New York.

Sept. 29, 2006.

Oliver J. Dunford, Steven S. Kaufman, William W. Jacobs, Thompson Hine LLP, Cleveland, OH, Douglas Eric Grover, Ginnine Beth Fried, Thompson Hine LLP, New York City, for Plaintiff.

Donald S. Zakarin, Jay Shapiro, Kathryn Elaine Wagner, Lisa M. Buckley, Pryor Cashman Sherman & Flynn LLP, New York City, for Defendant/Third Party Plaintiff.

Brian Todd Belowich, Lee S. Wiederkehr, Delbello Donnellan Weingarten Tartaglia, White Plains, NY, for Third Party Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS BY THIRD PARTY DEFENDANTS PMI SERVICES INC. AND RADIAN GROUP, INC.

McMAHON, District Judge.

In or about January 2004, Ohio Savings Bank (OSB) sued Manhattan Mortgage Company (MMC) and other defendants in connection with thirty-eight loans that were extended by OSB to borrowers. OSB, a savings bank located in Ohio, contracted with MMC, a New York mortgage broker, to locate and sell it residential real estate loans.

The Second Amended Complaint, which was filed by OSB in the Northern District of Ohio, alleged that MMC and OSB had a contract, pursuant to which MMC originated loans that OSB funded. OSB alleges that thirty-eight such loans (which have gone into default) should not have been recommended by MMC. OSB claims that MMC breached the parties' contract by originating these particular loans, and also that MMC breached various warranties and representations made in the contract to the detriment of OSB. Invoking an indemnity clause in the contract, OSB alleges that MMC is required to reimburse it for all damages suffered in respect of the delinquent loans.

OSB is required to conduct due diligence prior to closing loans. It contracted with, inter alia, various underwriters to perform due diligence on its behalf. MMC, as a defense to OSB's claims and in counterclaims addressed to OSB, alleges that OSB and its agents—including its loan underwriters—did not perform adequate due diligence, thereby relieving MMC of any responsibility to make good on the delinquent loans.

MMC has also commenced third party actions against various entities, two of which—PMI Mortgage Services Co. and Radian Group, Inc.—had underwriting contracts with OSB known as Underwriting Review Agreements, pursuant to which PMI and Radian agreed to review mortgage loan package agreements, determine whether all required documents were in the package, and conduct a mortgage loan underwriting, credit review underwriting, and mortgage insurance underwriting, to check whether the loan met certain guidelines. MMC claims that PMI and Radian failed to perform these services in an adequate and diligent manner, which caused OSB to fund loans that ultimately went into default. MMC alleges that it is a third party beneficiary of OSB's Underwriting Review Agreements with PMI and Radian, such that PMI and Radian are

liable to MMC for any losses MMC may suffer if it is determined that MMC is liable to OSB.

PMI and Radian have moved to dismiss the third party complaints. They rely on similar provisions in their Underwriting Review Agreements. Section 6(C) of PMI's Agreement provides as follows:

C. Limitation of Liability. PMI/Radian shall not have liability under this Agreement to any entity other than Ohio Savings, and Ohio Savings acknowledges and agrees that the remedies set forth in this Paragraph 6 shall be Ohio Savings's sole and exclusive remedies with respect to Material Errors under this Agreement . . .

And Radian's Agreement provides that any and all decisions made by Radian "shall be deemed undertaken solely on behalf of Customer [OSB]" (Section 2), sets forth OSB's (and no other party's) remedies against Radian in the event of any breach (Section 9), and thereafter limits Radian's liability as follows:

Radian shall not be liable for any special, indirect, consequential, punitive or other damages which Customer [OSB] *or any other entity* suffers or incurs as a result of any act or omission of Radian. (Section 10(c)). (emphasis added).

In both contracts, the underwriter's liability to OSB is limited to specifically identified damages or indemnification. See PMI Agreement at Section 6(B); Radian Agreement at Section 10(B). In both Agreements, OSB agreed to indemnify the underwriter against claims or suits that related to the services provided under the Agreements. See PMI Agreement Section at 6(D); Radian Agreement at Section 9.

Both PMI and Radian contend that the use of the quoted language in their respective Agreements expressly rules out any possibility that MMC was intended to be a third party beneficiary of the contract, and also precludes any implication that the parties contemplated that MMC would be a third party beneficiary.

Under Ohio law, which governs in this diversity action that was transferred to the Southern District of New York, PMI and Radian are correct. MMC is not, under any theory, a third party beneficiary of the Underwriting Review Agreements. It thus cannot successfully assert any claim for indemnification (the only permissible remedy under the Agreements) against PMI and Radian for breaching their obligations under the Agreements.

■ MMC also asserts a claim for contribution against PMI and Radian. Under Ohio law, a contribution claim is available only between joint tortfeasors or parties united in some other pre-existing relationship exposing them to a common liability. On the allegations of the third party complaints, there is no conceivable way that PMI and Radian could be found to be joint tortfeasors with MMC. Nor has any other relationship between MMC and the underwriters been alleged. The contribution claims must be dismissed as well.

*Standards on Motions to Dismiss Pursuant to Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the

court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In considering a motion to dismiss, this Court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir.2000); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996); *Wolff v. Rare Medium, Inc.*, 210 F.Supp.2d 490, 494 (S.D.N.Y. 2002). The PMI and Radian Underwriting Review Agreements are referred to in the third party complaints and are the basis for MMC's assertion of third party beneficiary liability. PMI and Radian have attached the text of those contracts to their motions to dismiss, and the court is free to consider the full text of those contracts.

*Discussion*

■ MMC's first theory of liability is that, because OSB has not sought relief against PMI and Radian for the deficient performance of their contractual obligation to provide competent mortgage underwriting services, MMC has claims against them as the third party beneficiary of the contracts between the underwriters and OSB. It seeks damages—or, in the alternative, indemnification—from Radian and PMI under this theory.

MMC's premise—that it is a third party beneficiary under the Radian and PMI Agreements—is incorrect.

The PMI and Radian Agreements clearly state that the only two parties are OSB and the respective underwriters. Both agreements expressly provide that the underwriters have no liability to any entity except OSB. The plain language of the two agreements clearly precludes MMC from maintaining that it was identified in the contract as a third party beneficiary. However, contrary to MMC's argument, it also precludes any argument that MMC was an unidentified but intended third party beneficiary of the Agreements.

Ohio has adopted Section 302 of the Restatement of the Law 2d, Contracts (1981), 439–440, which provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

■ Under this theory, only an intended beneficiary may assert rights to a contract when he is not a party to that contract. *TRINOVA Corp. v. Pilkington Bros., PLC*, 70 Ohio St.3d 271, 277, 638 N.E.2d 572 (Ohio 1994). And when there is clear evidence that the contracting parties do not intend that a third party have the benefit of the promisee's performance—that is, if the promisor and promisee expressly agree that no third party is to receive the benefit of their bargain—a third party may not assert a claim as a third party beneficiary under the contract. *Hill et al. v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (Ohio 1988). Clear contractual

language that excludes third parties from asserting rights under the terms of a contract ends any analysis of the third party beneficiary issue, and prevents the court from considering parol evidence of intent. *Crowinshield v. Campeon Roofing and Waterproofing, Inc.,* 129 Ohio App.3d 819, 823–24, 719 N.E.2d 89 (Ohio Ct.App.1998).

The language of the PMI Underwriting Review Agreement unmistakably precludes any inference that OSB and PMI intended to make MMC a third party beneficiary under the agreement. Moreover, the language is so clear and explicit that it precludes any inquiry into whether "circumstances indicate" that either PMI or OSB intended to confer on MMC the benefit of the promised performance (which, in this case, is adequate and competent due diligence underwriting of the loan). The words of the contract could not be clearer: "PMI shall not have liability under this Agreement to any entity other than Ohio Savings . . ." The use of such express language clearly indicates that the parties to the contract—OSB and PMI—did not intend to create third party beneficiary rights in MMC, and precludes the sort of fact-based inquiry into unexpressed intent that MMC seeks to compel.

The Radian Underwriting Review Agreement is not as straightforward as the PMI Agreement, but the net effect of its language is the same: the parties clearly intended to preclude liability to any third party. The Agreement provides that Radian's services are undertaken "solely on behalf of Customer [OSB]," and stipulates that, "Radian will not be liable, in connection with this Agreement or the services rendered by Radian hereunder, to Customer *or any other person or entity,* in contract, tort, strict liability, equity or oth-erwise, for any act, failure to act, error, mistake, or omission in reviewing a Loan hereunder." (Section 10(A)(2)). The Agreement further provides that "Radian shall not be liable for any . . . damages which Customer *or any other entity* suffers or incurs as a result of any act or omission of Radian. Upon the purchase of a Loan or the provision of additional insurance or other enhancement, Radian shall have no further obligation or liability to Customer in respect of the Loan in question." (Section 10(C))(emphasis added). The contract does provide a remedy for "Customer" (OSB)—and only for OSB—but that remedy is limited to indemnification, in the form of either providing additional insurance or other credit enhancement for the loan or purchasing the loan from OSB at a stipulated price. (Section 10(B)).

By limiting "Customer" to the remedies set forth in Section 10(B) of the Agreement—which remedies are exclusive to OSB—and precluding any form of recovery in damages, whether by Radian or "any other party," Radian and OSB clearly expressed their intent that no party other than OSB should have any right of action against Radian under its Underwriting Review Agreement.[1]

MMC argues that the references to "any other party" in Sections 10(A)(2) and (C) of the Radian Agreement contemplates the possibility of underwriter liability under the contract to third parties. The argument completely misses the mark. The references to which MMC points all expressly *preclude* any recovery by third parties, which makes it impossible to argue that the parties contemplated that MMC would benefit from Radian's performance.

---

1. Radian, however, was to be subrogated to any claims that OSB might have against any third party who might be liable to OSB on any loan as to which Radian's indemnification kicked in. See Section 10(A)(3).

MMC tries to shoehorn itself into agreements to which it is not a party by claiming that it has been (forcibly) transformed into the "successor" of OSB (whose "successors and assigns" can succeed to OSB's rights under the agreement). This endeavor is similarly misguided. A "successor" is a party that "takes over all of the assets and assumes all of the debts of another company," *Whitaker–Glessner Co. v. Strick*, 25 Ohio App. 415, 415, 158 N.E. 554 (Ohio Ct.App.1927); or, more generally, "one who follows or comes into the place of another." *Bank One Ohio Trust Co., NA, trustee Under Item 10 of Will of James McFarlin v. Hiram College*, 115 Ohio App.3d 159, 161, 684 N.E.2d 1275 (Ohio Ct.App.1996). Black's Law Dictionary, in turn, defines a "successor" in the corporate context as "A corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." *Black's Law Dictionary* 1446 (7th ed.1999). As MMC has not pleaded that it is the "successor" of OSB under any of those definitions, it cannot avoid dismissal on the ground that it is entitled to assert a contract claim under the "successors and assigns" clause of either Agreement.

Moreover, even if MMC were to have succeeded to OSB's contract rights as a "successor," it would confer no benefit on the third party plaintiff. OSB's right to bring claims against Radian and PMI was subject to a short contractual statute of limitations. Under the Radian Agreement, OSB had six months from the discovery of any defect to notify the underwriters of any problematic loans (Radian Agreement, Section 10(A)(2)(C)), while under the PMI Agreement, it had sixty days from discovery to notify PMI (PMI Agreement, Section 6(B)). These periods, the underwriters allege, expired well before

OSB sent any notice to Radian or PMI. If OSB's claims against the underwriters are time-barred, so are any claims by its "successors!"

For this reason, MMC has no claim for damages against either PMI or Radian. The claim for damages against the underwriters on MMC's theory that it was a third party beneficiary must be, and is, dismissed.

Moreover, indemnification—the alternative remedy sought by MMC under its third party beneficiary theory—rests entirely on the existence of a contractual relationship. *Travelers Indem. Co. v. Trowbridge*, 41 Ohio St.2d 11, 13, 321 N.E.2d 787 (Ohio 1975). Since MMC is not a third party beneficiary of the Underwriting Review Agreements, it cannot assert a claim for indemnity in reliance on that agreement's express indemnification provision in favor of OSB. MMC can, of course, assert its contention that the underwriters failed to carry out their contractual duties as a defense against liability to OSB. But that does not give MMC the right to assert claims against the underwriters.

Therefore, the third party beneficiary claim for indemnification asserted by MMC against PMI and Radian is dismissed.

### The Claim for Implied Indemnity

In the alternative, MMC asserts that it is entitled to indemnification under a theory of an implied contract of indemnity. This contention, too, is baseless.

"Implied contracts of indemnity are reserved for those 'situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrong committed solely by the other.'" *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391, 394, 653

N.E.2d 235 (Ohio 1995)(quoting *Reynolds v. Phys. Ins. Co. of Ohio,* 68 Ohio St.3d 14, 16, 623 N.E.2d 30 (Ohio 1993)). Relationships that have been found to satisfy this standard are those of the wholesaler and retailer, abutting property owner and municipality, independent contractor and employer, and master and servant. *Losito v. Kruse,* 136 Ohio St. 183, 185, 24 N.E.2d 705 (Ohio 1940). The relationship between MMC—an independent mortgage broker who located potential borrowers for OSB and brought them to the table—and Radian or PMI—which undertook obligations to OSB to perform due diligence on loans proposed by MMC so that OSB could make a unilateral decision to fund or not to fund those loans—is far too attenuated to permit implication of a contract of indemnity (even assuming that MMC and OSB's underwriters were joint tortfeasors—which, on the allegations of the third party complaint, they were not). *See also Yank v. Howard Hanna Real Estate Servs.,* 2003 WL 21500191, 2003 Ohio App. LEXIS 3135 (Ohio Ct.App.2003).

**The Claim for Contribution**

■ Under Ohio Rev.Code § 2307.25(A)—a section that appears in the civil procedure chapter of the Code—a claim for contribution accrues only after an adjudication that Party A is liable to Party B. *See Conley v. Brown Corp.,* 82 Ohio St.3d 470, 480, 696 N.E.2d 1035 (Ohio 1998). "The right to ... contribution becomes complete and enforceable only upon payment by the claimant satisfying the whole of the obligation." *Midwest Specialities, Inc., v. Crown Indus. Prod. Co.,* 940 F.Supp. 1160, 1168 (N.D.Ohio 1996), citing *Nat'l Mut. Ins. Co. v. Whitmer,* 70 Ohio St.2d 149, 152, 435 N.E.2d 1121 (Ohio 1982). PMI and Radian both contend that MMC's contribution claim is, at present, premature.

■ However, the timing of the commencement of contribution claims in federal courts is governed by Fed.R.Civ.P. 14, which provides:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff ...

As Wright & Miller note:

Moreover, it is not critical that state substantive law does not recognize a right to contribution until the original defendant has paid more than his pro rata share. Any judgment on the third-party claim does not become enforceable until after the common liability has been discharged by the original defendant. Impleader under Rule 14 merely accelerates the determination of liability and does not have the effect of enlarging any substantive rights.

6 Fed. Prac. & Proc. Civ.2d § 1448. In other words, the state rule is basically a rule of procedure, and in such cases federal courts sitting in diversity apply federal procedural law. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Moreover, while classifying a rule as substantive or procedural is sometimes a subtle undertaking, where the matter in question is one explicitly covered by the Federal Rules of Civil Procedure, "it is settled that ... the Federal Rule applies regardless of contrary state law." *Id.* at 427 n. 7, 116 S.Ct. 2211; *Accord New Market Acquisitions, Ltd. v. Powerhouse Gym,* 154 F.Supp.2d 1213, 1228 (S.D.Ohio 2001).

But while the contribution claim cannot be dismissed as premature under Fed. R. Civ. P 14, it must nonetheless be dismissed as fatally defective.

Ordinarily a claim for contribution lies between joint tortfeasors. In fact, under Ohio law, "Where two or more persons are jointly and severally liable in tort for the same injury ... there is a right of contribution among them ... The right of contribution exists only in favor of a tortfeasor who has paid more than his proportionate share ..." *Conley v. Brown Corp.*, 82 Ohio St.3d 470, 480, 696 N.E.2d 1035 (Ohio 1998). A finding that parties are joint tortfeasors is necessary to a claim for statutory contribution under Ohio Rev. Code § 2307.25(A).

There is no suggestion in the allegations of the third party complaint that MMC was a joint tortfeasor with Radian or PMI. Rather, MMC's claim is that OSB, by its agents Radian and PMI, failed to perform adequate due diligence on certain loans, thereby exposing MMC to possible contractual liability to OSB. MMC's claim is that PMI and Radian ought to have to reimburse it if MMC is liable to OSB under their contract. That is not a claim for contribution under the Ohio Revised Code.

MMC's argument that "OSB essentially alleges a massive fraud in connection with the Disputed Loans" (Def's Br. 18) does not bring MMC's claims against PMI and OSB under the umbrella of joint tortfeasor contribution. In fact, no tortious acts on the part of MMC have been alleged; OSB's claims against MMC sound exclusively in contract.

Non-statutory contribution is an equitable remedy. *Robinson v. Boyd*, 60 Ohio St. 57, 53 N.E. 494, 495 (1899). Under Ohio law, outside the context of joint tortfeasors, a claim for contribution depends on the existence of some relationship that renders it equitable to require contribution. For example, in *Frank Lerner & Assoc., Inc., v. Vassy et al.*, 74 Ohio App.3d 537, 599 N.E.2d 734 (1991), a court found that a minority shareholder who had signed a demand note on behalf of a corporation in order to secure the corporation's line of credit, and who satisfied the corporation's obligation on the note, was equitably entitled to contribution from the other shareholders who had also signed the note. All parties were liable for repayment of the note as a matter of contract law, so under equitable principles of contribution, each party was responsible for his pro rata share to the one who had satisfied the entire obligation.

I have found no case outside the joint tortfeasor context where equitable contribution was awarded in the absence of a pre-existing relationship among the parties that obligates them to share in a particular loss. Nor does MMC identify any such case. This is fatal to its non-statutory contribution claim because there is no such relationship between MMC and the underwriters.

As analyzed above, the contracts between OSB and each of the underwriters created no relationship between MMC and the underwriters, and conferred no rights on MMC and the underwriters. Nor did such a relationship arise here as a matter of law, as may be the case when a joint financial obligation is imposed on multiple actors by statute. *Baltimore & O.R. Co. v. Walker*, 45 Ohio St. 577, 16 N.E. 475 (1888) Finally, MMC and the underwriters do not stand together as "co-sureties" under the principles of equitable contribution because they simply did not share a "common debt or engagement." *Hartwell v. Smith*, 15 Ohio St. 200, 203 (Ohio 1864). MMC and the underwriters never undertook any joint obligation to OSB that could give rise to joint financial liability. While each of them had an obligation to OSB, those obligations were entirely different— MMC had no obligation to OSB to under-

write the loans; OSB had the right and the ability to perform due diligence on the loans, and it employed PMI and Radian to perform that service for it. Thus MMC's contribution claim against the underwriters is not "wholly analogous" to the claim in *Frank Lerner.*, as MMC suggests (Def's Br. 18). The shareholders who signed onto the corporate note in *Frank Lerner* had all assumed an identical obligation to repay the corporation's debts. Here, MMC and the underwriters assumed entirely separate contractual obligations to OSB that do not give rise to joint financial liability and therefore cannot support a claim for equitable contribution.

*Conclusion*

The Clerk of the Court is directed to enter judgment in favor of Radian and PMI dismissing the third party complaint as against them, with prejudice and with costs to Radian and PMI.