GUNSOREK et al., Appellees,

v.

PINGUE, Appellant.

[Cite as *Gunsorek v. Pingue* (1999), 135 Ohio App.3d 695.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–62.

Decided Dec. 2, 1999.

696

*Douglas J. Hart,* for appellees.

*Ball, Noga & Tanoury* and *Ronald B. Noga,* for appellant.

---

BROWN, Judge.

Joseph A. Pingue, Sr., defendant-appellant, appeals a decision of the Franklin County Court of Common Pleas. The trial court granted a motion for partial summary judgment in favor of plaintiffs-appellees, Lawrence F. Gunsorek, Randy Ward, and Anthony Werner. We affirm.

On April 29, 1997, the parties entered into an agreement concerning a parcel of land on Worthington–Galena Road within the city of Columbus. Appellees planned to build a commercial car wash on the property. Appellant agreed to sell the property to appellees for $650,000. Section 2 of the addendum to the agreement states:

"a. [Appellees] will deposit with [appellant] the sum of Twenty [*sic*] [T]wenty-Five Thousand Dollars ($25,000.00) (not to be held in escrow) with the signing of this Agreement by all parties. Said deposit to be returned to [appellees] if the City of Columbus is unable to approve the site plan contained in attached (Exhibit A) along with its intended uses within 30 days from the signing of this Agreement. [Appellees] are to reasonable [*sic*] comply with the zoning text as it currently applies to these three (3) particular Lots. [Appellant] will grant a 30-

day (*or reasonable period thereof*) extension for plan rework *as long as [appellees] are diligently pursuing a site plan approval.* [T]he failure of [appellees] to submit a site plan within 30 days of the signing of this Agreement will constitute a default, and therefore [appellant] will be entitled to retain the deposit, without prejudice to [appellant's] rights to pursue other remedies as available to [appellant].

"b. *Once the site plan is approved* [appellees] will make an additional payment in the amount of Twenty-Five Thousand Dollars ($25,000.00) with [appellant] *to be held as a deposit upon the final approval of a plot and building plan by the city of Columbus.* If for [s]ome reason the building plan is not approved in accordance with the approved site plan referred to in Exhibit A by the City of Columbus, *then this Agreement is **null and void** and all deposits held by [appellant] will be returned to [appellees].* If the second Deposit is made to [appellant] and for some reason [appellees] do not continue to build as per approved building plan within a reasonable period, then [appellant] can retain both deposits without prejudice to [appellant's] rights to pursue other remedies as may be available to [appellant], including but not limited to a right to specific performance of this contract." (Emphasis added.)

Section 5 of the addendum to the agreement stated: "This Agreement is to close within One Hundred Fifty (150) days of the signing of this agreement, *or any reasonable extension thereof.* At closing, [appellees] will pay to [appellant] the purchase price minus the above deposits." (Emphasis added.) Appellees paid an initial deposit of $25,000 to appellant.

Appellees claim that they submitted a site plan and the zoning text for the property to the city of Columbus on May 15, 1997. However, the city did not immediately approve the plans. Gunsorek stated that when he told the city employees reviewing the site plan that he needed to have approval from the city within one hundred fifty to one hundred eighty days of when he signed the contract, he was told, "I hear this every day from every developer. I'll do this in my time frame."

Since the site plan had not been approved by the city in September 1997, appellees asked appellant for the closing date to be extended. Appellant allowed one thirty-day extension and then refused any other extensions. In his deposition, Gunsorek claimed that appellant began insisting that appellees pay him the second deposit in October 1997. Gunsorek stated that appellant told him that "the site plan was approved when it wasn't, and he was then insisting upon the second deposit. Almost simultaneous with that, he was insisting on a closing on it."

On November 25, 1997, appellees filed a complaint against appellant. Count 1 of the complaint requested that "the Court determine the meaning, construction and validity of the Contract and declare the rights in and duties and status of the

parties as to the Contract and the Property and for [appellees'] costs of suit, including reasonable attorneys fees, incurred herein." .

. The building plan was finally approved by the city on June 3, 1998. On July 2, 1998, appellees filed a motion for partial summary judgment, requesting that the court declare that the time for closing the contract had been "extended pursuant to the Contract for a period of 120 days from the date the City approved the site plan or such longer reasonable period as may be required to close the Contract, including but not limited to obtaining City approval of the site plan and building plan."

On August 17, 1998, the trial court granted appellees' motion for a partial summary judgment, holding that pursuant to the terms of the contract, appellees "had been granted a reasonable extension." The court added that it was "not adding terms or rewriting the contract provisions but only giving effect to the intent of the parties." On December 17, 1998, the parties entered into a settlement agreement in which they agreed to dismiss all remaining claims without prejudice except for "the claims decided by the Court in its decision of August 17, 1998." Pursuant to the settlement agreement, the court entered a final entry on December 17, 1998, dismissing without prejudice all claims against appellees except for the claim addressed in the August 17, 1998 decision. The court also held that the August 17, 1998 decision would "be the final decision of this Court herein and that this Entry reconfirming that decision be a final appealable judgment in this cause, there being no remaining claims before this Court and there being no just reason for delay." Appellant timely appeals the trial court's December 17, 1998 judgment and presents the following four assignments of error:

"1. The Court erred in applying the doctrine of equitable estoppel in that Appellant had no legal obligation to orally or otherwise confirm that Appellant would hold Appellees to the closing date provided for in a written contract for the sale of real estate or be held to have waived that provision. .

"2. The Court violated the dictate of Rule 56, Ohio Rules of Civil Procedure, when it granted Appellees' motion for partial summary judgment, as there were genuine issues of material fact, including but not limited to what constituted a 'reasonable extension' of the closing date.

"3. The Trial Court violated the dictate of Rule 56, Ohio Rules of Civil Procedure, in failing to construe the evidence most strongly in favor of the nonmoving party when it granted Appellees' motion for partial summary judgment.

"4. The Trial Court erred in granting Appellees['] motion for partial summary judgment in that there were genuine issues of material fact as to whether Appellant waived the 'time is of the essence' provision of the written contract."

Appellant generally argues in each of his four assignments of error that the trial court erred in finding that the closing date for the contract had been extended. We will first review the contract to determine whether the trial court erred in this determination, and then we will specifically address each of the arguments raised in appellant's four assignments of error.

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204; *Hancock v. Longo* (Oct. 14, 1999), Franklin App. No. 98AP–1518, unreported, 1999 WL 816148.

Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044, 1046. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Baker v. Buschman Co.* (1998), 127 Ohio App.3d 561, 566, 713 N.E.2d 487, 490.

The interpretation of clear, unambiguous contract terms is a question of law. *Synergy Mechanical Contractors v. Kirk Williams Co., Inc.* (Dec. 22, 1998), Franklin App. No. 98AP–431, unreported, 1998 WL 938592. Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501.

Section 5 of the addendum to the agreement states that the agreement "is to close within One Hundred Fifty (150) days of the signing of this agreement, or any reasonable extension thereof." Section 2a of the addendum provides that appellant "will grant a 30-day (or reasonable period thereof) extension for plan rework as long as [appellees] are diligently pursuing a site plan approval."

The agreement shows that the intent of the parties was that the agreement not be enforceable against either party if the city of Columbus did not first approve the site plan and then later the building plan. Section 2b of the addendum states: "If for [s]ome reason the building plan is not approved in accordance with the

approved site plan referred to in Exhibit A by the City of Columbus, then this Agreement is null and void and all deposits held by [appellant] will be returned to [appellees]." Since nonapproval of the building plan would render the agreement null and void, appellant could not require appellees to close the agreement without the approval of the building plan by the city. Thus, by our interpretation of the agreement, unless appellant wanted to end the agreement with appellees, appellant was required to extend the period of closing of the agreement until at least after appellees obtained approval of the building plan by the city of Columbus.

While appellant may claim that not being able to close the contract within one hundred fifty days of the signing of the agreement is unfair, "[i]t is well-established that parties to a contract in a commercial setting should be free to enter into whatever type of relationship they desire. A contract does not have to be fair or equitable to be enforceable. 'Contracts * * * can be unfair or favor one side over the other. They are still binding and enforceable, so long as they are not procured by fraud, duress, overreaching or undue influence.'" (Citation omitted.) *Std. Elec. Serv. Corp. v. Gahanna–Jefferson Public Schools* (Aug. 25, 1998), Franklin App. No. 97APE11–1520, unreported, 1998 WL 542696, quoting *Walther v. Walther* (1995), 102 Ohio App.3d 378, 383, 657 N.E.2d 332, 335. Additionally, the contract provides remedies for appellant if appellees failed to fulfill their contractual obligations. For example, if appellees failed to submit a site plan to the city of Columbus within thirty days of the signing of the agreement, appellant would be entitled to retain appellees' first deposit.

Accordingly, after having reviewed the complete record and having construed the evidence most strongly in favor of appellant, we find that the trial court did not err in finding that pursuant to the contract, appellees were granted an extension of time for closing the contract in order to get approval of the site plan for the property from the city of Columbus. Therefore, the trial court did not err in granting appellees' motion for partial summary judgment.

Appellant argues in his first assignment of error that the court erred in applying the doctrine of equitable estoppel. We do not need to address appellant's argument because even if we were to find that the trial court erred in applying the doctrine of equitable estoppel, "when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial." *State v. Payton* (1997), 124 Ohio App.3d 552, 557, 706 N.E.2d 842, 845. Appellant's first assignment of error is overruled.

Appellant contends in his second assignment of error that there is a question of fact regarding whether appellees were diligently pursuing a site plan approval.

While appellant did present sufficient evidence demonstrating that a question of fact existed concerning appellees' diligence in obtaining approval of the site plan, this fact is not dispositive of this appeal. As we stated previously, unless appellant wanted to end the agreement, appellant was required to extend the period for closing the agreement until at least after appellees obtained approval of the building plan by the city of Columbus based upon the terms of the agreement. Whether appellees were "diligently pursuing a site plan approval" concerns only whether appellees' actions constituted a default, which would result in appellant being entitled to retain the first deposit. Appellant's second assignment of error is overruled.

Appellant claims in his third assignment of error that the trial court failed to construe the evidence most strongly in favor of appellant when it granted appellees' motion for partial summary judgment. Even if this occurred, this is not a basis for reversing the trial court's decision. Our review of the record is *de novo* and is independent of the trial court's review. *Baker*, 127 Ohio App.3d at 566, 713 N.E.2d at 490–491. We are also required to construe the evidence most strongly in favor of the nonmoving party. Therefore, any error by the trial court in its standard of review of the evidence when ruling upon a motion for summary judgment will be remedied if the appellate court applies the proper standard of review. Since we have applied the standard of review stated in Civ.R. 56 for a review of a motion for summary judgment in the present appeal, appellant's third assignment of error is overruled.

Appellant argues in his fourth assignment of error that genuine issues of material fact existed as to whether appellant waived the "time is of the essence" provision of the contract. Appellant claims that this provision should apply to the provision of Section 5 of the addendum that sets the time limit for closing the agreement to be "within One Hundred Fifty (150) days of the signing of this agreement." However, Section 5 also allows for "any reasonable extension" of the closing date for the agreement, and we have already found that pursuant to Section 2a of the addendum to the agreement, appellant could not close the agreement until after the city of Columbus approved the building plan. Therefore, even if we applied the "time is of the essence" provision to Section 5 of the addendum, this would not affect our decision. Appellant's fourth assignment of error is overruled.

Accordingly, appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and TYACK, JJ., concur.