OPINION
William F. McDonald, plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas granting a motion for summary judgment in favor of Dennis P. Miller, Kenneth Heater, Richard Sapienza, Materials Engineering and Technical Support Services, Ltd. ("METSS"), Fiber Optics for Communication, Analysis and Sensing, Ltd. ("FOCAS"), and Material Engineering and Technical Support Services Corp., defendants-appellees.
On July 13, 1994, METSS was formed as a limited liability company after the Articles of Organization were filed with the Ohio Secretary of State. Appellant stated in a deposition that he, Heater, and Miller, began discussing the idea of forming METSS in the summer of 1994. He stated that the concept of METSS was to allow them to have "more control over what we were doing and how we were doing it."
An operating agreement for METSS was drafted and signed by appellant, Miller, Heater, and Sapienza. Article III, Section 1 of the agreement listed the four individuals as "members." Article VI states in part:
 The net profits and net losses of the Company shall be determined in accordance with accepted accounting principles and shall be allocated to the Members in accordance with the following schedule:
Name Interest
Kenneth Heater 1/4
William McDonald 1/4
Dennis Miller 1/4
Richard Sapienza 1/4
 All net income or net losses allocated to a Member in accordance with the terms of this Article VI shall be credited or charged, as the case may be, to the capital account of that Member.
Article VII, Section 1 provided that "[e]ach Member shall contribute $5,000 as the initial Capital Contribution." Article VII, Section 4 stated that it "is the intent of the Members to maintain a cash reserve equivalent to twenty thousand dollars ($20,000.00) as noted in Section 1 herein. This reserve shall be used for the operation of the company and not for distributions unless the Members, by a three-fourths (3/4) vote, decide otherwise."
Appellant stated in his deposition that he originally made a capital cash contribution of only $400. However, appellant claims that on December 27, 1995, he attempted to pay $4,411.30 as a capital contribution by endorsing a reimbursement check from METSS back to METSS. Appellant stated that Miller would not accept the check but, instead, told him he had to first deposit the check in his personal account and then pay METSS with a personal check. Appellant further stated that he did not comply with Miller's request because he "didn't see that it was critical to write a check out of my account." When asked in his deposition whether he thought ownership in METSS was tied to the $5,000 capital contribution, appellant replied that he "didn't understand that they were."
Beginning January 22, 1996, several meetings were held regarding the state of appellant's capital account and his membership in METSS. Appellant stated that the other members of METSS proposed "remov[ing] me as a managing partner of the company, and upon payment of my equity, would supposedly bring me back in as a managing partner of the company." Appellant further stated that the controversy regarding the capital contribution also involved "a major breakdown [in] the trust in the partnership." When asked whether the breakdown in the partnership was a result of his failure to pay the $5,000 contribution, appellant responded:
 It started with a result of not being able to see the books, not being able to understand where the checking account was, not being able to know what was going on in the partner meetings that I wasn't at, not knowing that people were out interviewing for technicians when I should have been included in the discussions. * * * I was no longer being treated as a partner.
Appellant was given a document to sign entitled "MEETING OF ALL THE MEMBERS AND MANAGERS OF METSS, LTD., dated January 24, 1996." The document stated in part: "[Appellant] has violated Article VI, Section 1 of the METSS Operating Agreement dated October 9, 1995 by not contributing to his capital account the required level of $5,000. METSS considers his Member and Manager positions terminated due to this breach of contract until the capital account is fully paid." The document outlines a payment plan for appellant and adds a clause that by "missing any one of these payments, [appellant] relinquishes his Member position and will be reimbursed only his equity capital." The document also states that the "remaining Members hereby unanimously agree to continue the business of the Company as METSS upon the termination of [appellant's] membership." The document provided three options for appellant: (1) agree to the document and accept the decision of METSS' management; (2) not accept the decision and "understand that I have thereby accepted an independent contractor position"; and (3) resign as a member and manager of METSS. Appellant chose not to accept any of the options presented. METSS was dissolved on April 15, 1996.
On June 6, 1996, appellant filed a complaint against appellees. In the complaint, appellant alleged that on or prior to January 29, 1996, Miller, Heater, and Sapienza "engaged in a conspiracy to wrongfully deprive [appellant] of his interest in METSS and FOCAS." Appellant claimed that he suffered damages due to appellees' actions. Appellees filed a counterclaim against appellant, alleging that he was liable for breach of contract, fraud, breach of fiduciary duty, tortious interference with contractual relations and business opportunities, misappropriation of trade secrets, and conversion.
On June 22, 1998, appellees filed a motion for summary judgment arguing that appellant "did not fulfill his obligations under the written Operating Agreement and thus never was a Member under METSS or FOCAS." On October 2, 1998, the trial court granted appellees' motion for summary judgment. The court stated:
 The operating agreement of the company in question provides that "(e)ach member shall contribute $5,000.00 as the initial capital contribution."
 [Appellant] admitted in his deposition that he did not make the $5,000 capital contribution.
* * *
 This simple analysis clearly demonstrates that the $5,000.00 capital contribution of the operating agreement is a mandatory condition precedent to membership. On this basis alone, the Court finds that [appellant] is not a member. However, even if he is not precluded by the express language of the agreement, he is estopped from claiming membership in the company by his conduct.
On August 22, 2000, an agreed final judgment entry was filed by the court. The entry incorporated the October 2, 1998 decision and dismissed all the parties' remaining claims including appellees' counterclaims. Appellant filed a notice of appeal on September 1, 2000, and presents the following two assignments of error:
 I. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT, AND DENYING APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, BECAUSE APPELLANT WAS A MEMBER OF THE LIMITED LIABILITY COMPANIES KNOWN AS METSS AND FOCAS, AS MANIFESTED IN THE PLAIN LANGUAGE OF THE PARTIES' OPERATING AGREEMENT.
 II. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMMARY JUDGMENT BECAUSE THE TRIAL COURT MISAPPLIED THE DOCTRINE OF EQUITABLE ESTOPPEL AND BECAUSE THERE EXIST GENUINE ISSUES OF MATERIAL FACT.
Appellant argues in his first assignment of error that the trial court erred when it granted appellees' motion for summary judgment. Appellant argues that the court erred in its conclusion that his complaint should be dismissed because he was not a member of METSS.
Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Sukulovski v. Bubev (Aug. 8, 2000), Franklin App. No. 99AP- 1224, unreported, discretionary appeal not allowed (2000),90 Ohio St.3d 1493.
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Baker v. The Buschman Co. (1998),127 Ohio App.3d 561, 566.
The interpretation of clear, unambiguous contract terms is a question of law and generally courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Gunsorek v. Pingue (1999), 135 Ohio App.3d 695, 700. If the language in a contract is clear and unambiguous, there is no issue of fact to be determined and the court cannot create a new contract by finding an intent not expressed in the clear language employed by the parties. McConnell v. Hunt Sports Enterprises (1999), 132 Ohio App.3d 657, 674. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638.
The narrow issue we address is whether appellant was a member of METSS.[1] Appellant's complaint against appellees is based upon appellees wrongfully depriving him of his membership interest in METSS. Therefore, in order for appellant to sustain his claim, it is necessary for him to show that he was a member of METSS at some point in time.
A review of the operating agreement for METSS shows the language is clear and unambiguous. Appellant is listed as a member of METSS pursuant to Article III, Section 1 and Article VI. For example, Article III, Section I states that "[t]he names and addresses of the Members are as follows: * * * William McDonald." Article VI also states that appellant's membership interest in METSS is a one-quarter interest. Article I defines a member as "each of the parties who executes a counterpart of this Operating Agreement as a Member and each of the parties who may hereafter become Members." Appellant signed the agreement on October 9, 1995.
The basis of appellees' argument that appellant was never a member is the provision found in Article VII, Section 1, which states that "[e]ach Member shall contribute $5,000 as the initial Capital Contribution." However, a review of the complete agreement fails to show that the $5,000 contribution was a prerequisite to membership in METSS. The phrase "each Member shall contribute $5,000" presupposes that the person contributing the $5,000 is already a member. If the intent of this provision was to make membership conditional upon the payment of $5,000, it is not apparent from the plain language of the document. Additionally, there is no time requirement designated in the agreement when a member is required to make the capital contribution.
Accordingly, after having reviewed the complete record and construing the evidence in a light most favorable to appellant, we find that the trial court erred when it concluded that appellant was not a member of METSS. While appellant's membership with METSS was terminated at some point by either the dissolution of METSS on April 15, 1996, or by the actions of the remaining members, a review of the plain language of the operating agreement establishes appellant was a member of METSS at some point in time. Appellant's first assignment of error is sustained.
Appellant argues in his second assignment of error that the trial court misapplied the doctrine of equitable estoppel because there were genuine issues of material fact. A prima facie case for equitable estoppel requires a plaintiff to prove four elements: (1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) that it induces actual reliance that is reasonable and in good faith; and (4) that is causes detriment to the relying party. Romine v. Ohio State Hwy. Patrol (2000), 136 Ohio App.3d 650, 654.
In the present case, the problem with applying the doctrine of equitable estoppel to sustain appellees' motion for summary judgment is that there are numerous factual disputes regarding whether appellant intended on paying the full $5,000 capital contribution. The trial court's statement that appellant made assurances to appellees "that he would make the required initial cash contribution [and therefore] knew the representations he made were false and that [appellees] relied thereon to their detriment" was a factual determination that appellant disputes. Appellant's testimony at his deposition provides many instances in which he claims he attempted to pay his capital contribution or make arrangements for future payment. Appellant's second assignment of error is sustained.
Accordingly, we sustain appellant's two assignments of error. The judgment of the Franklin County Court of Common Pleas is reversed, and this case is remanded to that court for further proceedings consistent with this opinion.
 ___________ BROWN, J.
PETREE, and BOWMAN, JJ., concur.
[1] We note that appellant's complaint alleged that he was wrongfully deprived of his interest in METSS and FOCAS. However, the only membership interest that was analyzed by the trial court was appellant's interest in METSS. Therefore, we cannot address whether appellant was a member of FOCAS.