OPINION
Sherry Arrigo-Klacik, plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas granting a motion for summary judgment in favor of Germania Singing and Sports Society, defendant-appellee.
Appellee is an Ohio non-profit corporation incorporated to promote German song and cultural heritage. Appellant was employed by appellee as a cook from July 1996 to November 1997. Appellee operates a kitchen facility generally used for Friday and Saturday evening meals and special occasions. Appellee's kitchen facility has two ovens with six burners, one oven with a grill, and a large broiler oven, all fueled by natural gas.
On November 8, 1997, appellant sustained injuries while working around one of the ovens in appellee's kitchen. Appellant claimed that the oven exploded, causing severe burns to her face, arms, and upper torso. She testified that when she "went to open up the oven door *** all I saw was a flame that was crawling up. I went to shut the door. I kicked the door shut and flames came up and all over me." Appellant stated that she sustained first and second degree burns and now has an ongoing fear of gas appliances.
Appellant filed a complaint against appellee on November 6, 1998, alleging that her employment with appellee involved the use of "dangerous instrumentalities with full knowledge [by appellee] of the hazards and/or defects with the ovens constitut[ing] a deliberate and intentional action that made the injuries to [appellant] certain or substantially certain to occur." In her answer to appellee's interrogatories, appellant stated that appellee's management was aware of previous problems with flames coming out of the ovens.
On November 1, 1999, appellee filed a motion for summary judgment arguing no genuine issue of material fact exists concerning whether appellee intentionally injured appellant. In support of its motion, appellee presented affidavits from Gerhard Wolff, Joseph Motika, Rolf Digel, John Smith, and Joseph Fenner. The affidavits addressed the question whether appellee was aware of any problems with the ovens prior to appellant's accident.
Wolff, president of appellee, stated that he had "no recollection of ever having been informed prior to the accident *** that any of the ovens produced a flashback or flames, or created any other dangerous condition." Motika, vice-president of appellee, stated that he had "no personal knowledge of any report *** about any flame-out incidents in either July or September 1997, but he does have knowledge that from time to time the pilot lights on the top burners would go out because of drafts in the kitchen." He also stated that after appellant's accident, he inspected the oven she was using at the time of the accident and found that everything appeared normal. Digel, a member of appellee's since 1958, stated that to his knowledge, "from the time of the reconditioning of these appliances in 1978 to the time of [appellant's] alleged incident on November 8, 1997 *** there have been no other incidents or injuries, arising from the use of the first oven on the far left."
Smith, a service technician for the Wasserstrom Company, stated in his affidavit that he inspected the oven in question after the accident, stating:
 [I]f there in fact had been a fire or "flame-out," it most likely was caused by the burner intake orifice connection to the gas supply piping being slightly ajar, allowing some of the gas, instead of flowing into and throughout the burner, to flow freely into the burner compartment and perhaps into the oven, where the gas could have been ignited at the moment of opening the oven door.
 [T]he most probable cause of the connection being ajar was a jarring, or a slamming or kicking, of the oven door against the frame of the oven, and the simultaneous repetitive vibration of the door against the oven body, as the stove has no wheels and stands firmly on the floor; in addition, another possible contributing cause may have occurred when a cook or other person may have unknowingly partially dislodged the connection while cleaning the oven or burner assembly.
 [S]uch a condition of the burner orifice being slightly ajar or off center is one which cannot readily be seen or noticed by a lay person.
Concerning an incident that occurred on July 26, 1997, Fenner, a trustee for appellee, stated that he was told by employee, Bonnie Hart, that an oven was not working. He stated that he noticed a floor fan was aimed at the ovens and surmised that the oven pilot light had gone out on the stove nearest to the outside entrance door to the kitchen. He further stated that he checked the burner orifice connection, saw that it appeared to be tight, relit the pilot light, turned on the oven gas control valve, and saw the burner flame come on as normal. Concerning an incident that occurred in September 1997, Fenner stated that he was present at the time but had "no personal knowledge of any ball of fire." He stated that when he was told there was a problem with the oven, he checked the oven and relit the pilot light just as he had following the July 26 incident.
Appellant filed a memorandum contra appellee's motion for summary judgment on November 30, 1999. Appellant argued in her memorandum that appellee's management was informed of two similar incidents prior to her incident on November 8, 1997. Appellant presented affidavits from Bonnie Hart, Vanessa Arrigo, and Rebecca Walcott concerning the prior incidents. Appellant claimed that appellee, well aware of the prior incidents and still requiring appellant to use the oven, "had knowledge that the harm involved in this case was `substantially certain'" to occur.
On October 5, 2000, the trial court sustained appellee's motion for summary judgment. The court held that appellant "has not produced any evidence which, if believed, would support a finding that the employer had actual knowledge that an injury was a substantial certainty." Appellant appeals this decision and presents the following single assignment of error:
 THE TRIAL COURT ERRED BY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[.]
Appellant argues in her sole assignment of error that the trial court erred in its decision granting appellee's motion for summary judgment. Appellant contends the record shows there is a factual dispute concerning whether appellee had knowledge that harm was a "substantial certainty."
Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Rodgers v. Custom Coach Corp. (June 22, 2000), Franklin App. No. 99AP-1167, unreported.
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485. When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. Gunsorek v. Pingue (1999), 135 Ohio App.3d 695,700.
Ohio's workers' compensation system is based on the premise that an employer is protected from a suit for negligence in exchange for compliance with the Workers' Compensation Act, which:
 *** operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability. Blankenship v. Cincinnati Milacron Chemicals, Inc. (1982), 69 Ohio St.2d 608, 614.
However, an employer is not immune from civil liability for employee injuries, disease, or death caused by the employer's intentional tortious conduct in the workplace, since such conduct necessarily occurs outside the employment relationship. Conley v. Brown Corp. of Waverly, Inc. (1998), 82 Ohio St.3d 470, 479. Therefore, workers who have been injured as a result of intentional torts by employers are not required to seek redress from the workers' compensation system. Bunger v. Lawson Co. (1998), 82 Ohio St.3d 463, 466.
The Ohio Supreme Court has stated:
 [I]n an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee. Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph seven of the syllabus.
One of the common law elements of an intentional tort is "intent," which has been defined in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus:
 [I]n order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Citations omitted.)
Since a plaintiff must satisfy all three prongs, failure of proof with respect to any one prong renders immaterial any disputes of fact with respect to the other prongs. Keller v. Northwest Conduit Corp. (Sept. 26, 2000), Franklin App. No. 99AP-1403, unreported, discretionary appeal not allowed (2001), 91 Ohio St.3d 1432. Mere knowledge and appreciation of a risk does not show intent on the part of the employer. Cross v. Hydracrete Pumping Co., Inc. (1999), 133 Ohio App.3d 501, 507. It is also important to note that in the arena of intentional torts, it is an "actual knowledge" standard. Keller, supra. "What a reasonable person should have known is not sufficient." Burkey v. Teledyne Farris Engineering (June 30, 2000), Tuscarawas App. No. 1999AP030015, unreported, discretionary appeal not allowed, 90 Ohio St.3d 1450.
The trial court found appellant produced sufficient evidence in response to appellee's motion for summary judgment to show there is a genuine issue of material fact as to the first prong of the Fyffe test. This conclusion was based upon appellant's claims that the two prior incidents support a finding that a similar set of circumstances had occurred on at least two previous occasions. A review of the evidence shows there is a question of fact concerning whether appellee had knowledge of the existence of a dangerous process, procedure, instrumentality or condition within its business operation.
The trial court based its decision to grant summary judgment in favor of appellee upon a finding that appellant failed to produce sufficient evidence to support the second prong of the Fyffe test. The trial court stated:
 Viewing all evidence in the light most favorable to [appellant], there is evidence to support a finding that [appellee's] conduct here was negligent, or even reckless. But there is no evidence to support a finding that the injury to [appellant] was substantially certain to result from the dangerous condition she claims existed with the oven. *** In this case, [appellant] has not produced any evidence which, if believed, would support a finding that the employer had actual knowledge that an injury was a substantial certainty, and to prevail at trial [appellant] must be able to show that [appellee] indeed had such knowledge.
Regarding the level of intent needed to satisfy the second prong of the Fyffe test, this court has stated:
 To satisfy the second prong of the Fyffe test, plaintiff had to produce evidence that [the employer] knew of the substantial certainty of injury to [appellant] as a result of the dangerous condition. Even if an injury is foreseeable, and even if it is probable that the injury would occur if one were exposed to the danger enough times, there is a difference between probability and substantial certainty. The mere knowledge and appreciation of a risk-something short of substantial certainty-is not intent. Unless the employer actually intends to produce the harmful result or knows that injury to its employee is certain or substantially certain to result from the dangerous instrumentality or condition, the employer cannot be held liable. Accordingly, an intentional-tort action against an employer is not shown simply because a known risk later blossoms into reality. Rather, the level of risk-exposure must be so egregious as to constitute an intentional wrong. Berge v. Columbus Community Cable Access (1999), 136 Ohio App.3d 281, 308-309. (Citations omitted.)
In order to determine whether the trial court was correct in its finding that insufficient evidence was presented by appellant to satisfy the second prong of the Fyffe test, we examine the record de novo.
In her memorandum arguing against summary judgment, appellant submitted an affidavit, which she authored. She also submitted affidavits by Bonnie Hart, Vanessa Arrigo, and Rebecca Walcott. Appellant, Hart and Arrigo all stated in their affidavits that in September 1997, they "witnessed unusual flames in and about the oven on the far left in [appellee's] kitchen." They told Joe Fenner, the individual that employees were to alert concerning any problems with equipment, about the unusual flames. Fenner told them that "some part needed to be replaced to fix the problem."
Hart, appellant's mother, Arrigo, appellant's daughter, and Walcott, appellant's sister, all stated that "on July 26, 1997, the left oven in the kitchen [the one that caused appellant's injuries] at the Germania Club shot flames out approximately one foot from the oven." They further stated they alerted Motika about the flames coming out of the oven.
Each of these affidavits similarly establishes that "unusual flames" were seen in September 1997, and that on July 26, 1997, the oven appellant was using "shot flames out approximately one foot from the oven." As stated previously, there is a question of fact concerning whether appellee had knowledge of the existence of a dangerous process, procedure, instrumentality or condition within its business operation. The nature of these previous incidents involving unusual flames presents a question of fact concerning whether appellee knew that subjecting its employees to use the ovens meant that harm was a substantial certainty.
"[P]rior accidents are to be considered as one fact of knowledge that an injury is substantially certain to result, and that the absence of prior accidents `strongly suggests' that injury from the procedure was not substantially certain to result from the manner in which the job was performed." Knapp v. Wal-Mart Stores, Inc. (Oct. 9, 1997), Franklin App. No. 97APE03-392, unreported, discretionary appeal not allowed (1998),81 Ohio St.3d 1446, following Foust v. Magnum Restaurants, Inc. (1994),97 Ohio App.3d 451. In the present case, the presence of prior accidents suggests a reasonable person could conclude injury was substantially certain to occur. Additionally, a review of the evidence shows appellant satisfied the third prong of the Fyffe test because appellee required appellant to continue to use the ovens even though appellee had knowledge of prior incidents involving "unusual flames."
Accordingly, after reviewing the evidence submitted by both parties in a light most favorable to appellant, we find the trial court erred in granting summary judgment in favor of appellee. Appellant produced sufficient evidence to satisfy all three prongs of the Fyffe test. Accordingly, appellant's assignment of error is sustained, the judgment of the Franklin County Court of Commons Pleas is reversed, and this case is remanded to that court for further proceedings consistent with this opinion.
 _________________ BROWN, J.
TYACK, J., concurs. BRYANT, P.J., dissents.