DECISION
Tedila Zacchaeus, plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas, which granted a motion for summary judgment in favor of defendants-appellees, Mount Carmel Health System and Dorothy Lewallen.
On October 9, 1999, appellant filed a complaint against appellees. In the complaint, appellant stated he began his employment with Mount Carmel Health System ("Mount Carmel") on June 22, 1998, and was terminated by Mount Carmel on August 11, 1998. Appellant also stated Lewallen was an employee and/or agent acting within the scope of her employment with Mount Carmel. Appellant's complaint alleged three forms of relief: (1) race discrimination-harassment, pursuant to R.C. 4112.99; (2) race discrimination, terms and conditions pursuant to R.C. 4112.99, and (3) retaliation, pursuant to R.C. 4112.99.
Appellant stated his racial harassment claim was based upon "remarks that were demeaning to his race and national origin by Supervisor Dorothy Lewallen * * * [who] made remarks such as `black South Africans are monkeys, all blacks are on Welfare and on drugs,' she also stated that she did not like blacks." Appellant stated that he objected to Lewallen's remarks and demanded that they cease. Appellant claims Lewallen told him he would have to endure her remarks or be terminated. Appellant also claims appellees conduct "constituted racial harassment in that it created a hostile, offensive or intimidating working environment." Appellant further claims that as a direct and proximate result of appellees' conduct, he:
 * * * suffered loss of compensation, loss of fringe benefits, loss of future earnings and loss of reputation, humiliation, embarrassment, adverse health, loss of self esteem, and loss of time and money endeavoring to protect himself from [appellees'] unlawful discrimination, including costs and attorneys fees.
Appellant's retaliation claim is based upon his allegation that he was terminated after he complained of racial harassment to Lewallen. Appellant claims the reasons he was given by employees of Mount Carmel for his termination were a pretext for unlawful retaliation in violation of R.C. 4112.99.
On July 14, 2000, appellees filed a motion for summary judgment. Appellees argued appellant could not establish a claim for a hostile work environment based on race, a claim for race discrimination, a claim for retaliation, or a claim for emotional distress. Appellees produced evidence showing that appellant's termination was based upon his poor work performance and tardiness and not upon racial discrimination. On May 18, 2001, the trial court granted appellees' motion for summary judgment. Appellant appeals this decision and presents the following two assignments of error:
 I. WHETHER OR NOT THE COURT IMPROPERLY MADE FINDINGS OF FACT AND IMPROPERLY WEIGHED INFERENCES AGAINST APPELLANT ON MATERIAL ISSUES IN ISSUING SUMMARY JUDGMENT ON THE RACIAL HARASSMENT CLAIM.
 II. WHETHER OR NOT THE COURT IMPROPERLY MADE FINDINGS OF FACT AND IMPROPERLY WEIGHED INFERENCES AGAINST APPELLANT ON MATERIAL ISSUES IN ISSUING SUMMARY JUDGMENT ON THE RETALIATION CLAIM.
Appellant argues in his first assignment of error that the trial court improperly made findings of fact and improperly weighed inferences against him on material issues of fact relative to his racial harassment claim. Appellant contends the evidence in the record supports his claim of racial harassment.
Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Gunsorek v. Pingue (1999), 135 Ohio App.3d 695, 700, discretionary appeal not allowed (2000), 88 Ohio St.3d 1478.
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Baker v. The Buschman Co. (1998),127 Ohio App.3d 561, 566.
R.C. 4112.02(A) states that it shall be an unlawfully discriminatory practice for "any employer, because of the race * * * of any person, to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Whoever violates R.C. Chapter 4112 "is subject to a civil action for damages, injunctive relief, or any other appropriate relief." R.C. 4112.99.
Appellant's assignment of error relates to appellant's claim in his complaint that appellees' "conduct constituted racial harassment in that it created a hostile, offensive or intimidating working environment." To establish a claim brought under R.C. Chapter 4112 against an employer for a hostile work environment created by racial harassment, a plaintiff must establish: (1) the employee was a member of the protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon race; (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment; and (5) the existence of respondeat superior liability. Smith v. Greater Cleveland Regional Transit Auth. (May 24, 2001), Cuyahoga App. No. 78274, unreported, following Harris v. Forklift System, Inc. (1993),510 U.S. 17, 114 S.Ct. 367.
This court will initially address the fourth requirement as it is central to this case. In order to determine whether the work environment was sufficiently hostile to satisfy the fourth prong of this test, the court looks at all of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. Faragher v. City of Boca Raton (1998), 524 U.S. 775,787-788, 118 S.Ct. 2275, 2283. "The reason why this standard should be followed is to ensure that courts and juries do not mistake ordinary socializing in the workplace * * * for discriminatory `conditions of employment.'" Bertolini v. Whitehall City School Dist. Bd. of Edn. (2000), 139 Ohio App.3d 595, 606-607, quoting Oncale v. Sundowner Offshore Serv., Inc. (1998), 523 U.S. 75, 81, 118 S.Ct. 998, 1003. "[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." Starner v. Guardian Industries (2001), 143 Ohio App.3d 461, 470.
Appellant stated in his complaint that his action for racial harassment against appellees was based upon the following:
 On several occasions throughout his brief employment with [appellees], [appellant] was exposed to remarks that were demeaning to his race and national origin by Supervisor Dorothy Lewallen * * *. Lewallen made remarks such as "black South Africans are monkeys, all blacks are on Welfare and on drugs," she also stated that she did not like blacks.
Appellant argues that his "own testimony is sufficient to overcome a motion for summary judgment because it creates a material issue of fact" concerning whether he was in a hostile working environment. Appellant's testimony is part of the record through his deposition testimony and an affidavit submitted with his memorandum contra to appellees' motion for summary judgment.
In appellant's deposition on April 3, 2000, he testified that while he worked with Lewallen, "[e]very night something is happened. Every night is continuously happened." Appellant was asked by appellees' attorney to "talk about every conversation that occurred every night * * * start[ing] with the first day." Appellant stated that on the first night, Lewallen said that "she don't like children and black people, and most blacks in this country in welfare and some stuff." This conversation occurred one week before appellant was fired. Appellant testified that the "second thing she told me about they was taking some criminal issue in the country." Appellant stated that in the third conversation he had with Lewallen, she:
 * * * said she have a friend in South Africa and they doing some dog show, and she from England. And she lives — I mean, she's South African, and she was receiving E-mail saying that this lady — South Africa was, I mean, falling apart because of those monkey took over the position, they don't know how to lead the country.
Appellant claims this conversation occurred the day before he was fired. When appellant was asked whether there were any other times when Lewallen made any comments about black people other than the three he testified to, appellant answered: "That's the only thing I can recall."
Appellant also testified that after he was fired, he worked for Mount Carmel a second time through a temporary agency at Mount Carmel East. Appellant stated that "this lady write down a letter for other, her co-employee, why is black children eating chocolate, and isn't that why their face is too black." Appellant could not recall the person's name, but believed she was a co-employee in the sterile processing lab. When asked if there were "any other occasions when you worked at Mount Carmel either east or west when anybody made any comments about black people" besides the three comments from Lewallen and the comments by the lady at Mount Carmel East, appellant answered "no."
After appellees filed their motion for summary judgment on July 14, 2000, appellant filed a memorandum arguing against the granting of appellees' motion. Appellant included an affidavit dated August 6, 2000, which stated the following:
 [D]uring the course of my tenure with Mount Carmel, I endured racially harassing remarks by my Supervisor, Dorothy Lewallen. Ms. Lewallen would make remarks such as "All blacks are on welfare." "All blacks are on drugs." "South African blacks are [a] bunch of monkeys," and "were going to ruin the country of South Africa." She also stated she "did not like babies," and also that she "did not like black people." * * * I was offended and humiliated by these remarks * * *.
After having construed this evidence in a light most favorable to appellant, we find the evidence appellant presented concerning appellees' alleged racial harassment is insufficient to sustain a claim for racial harassment pursuant to R.C. Chapter 4112. Conduct that is merely offensive is not actionable as a hostile work environment harassment. Harris, supra, at 21. The conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment." Id. The evidence presented by appellant does not meet this standard. For example, appellant testified in his deposition that the alleged comments by Lewallen were made on only three occasions over a one-week span and, therefore, the incidents can be characterized as "infrequent." A review of the individual comments shows they were not physically threatening or sufficiently humiliating to create a hostile working environment. In fact, the comments about South Africa were not attributed to Lewallen but, instead, were Lewallen's recitation of another person's comments. Additionally, appellant presented no evidence that the alleged comments unreasonably interfered with his work performance. While we agree with appellant that the alleged comments were offensive utterances, they do not rise to the severity level necessary for an actionable hostile work environment claim.
Appellant also argues in his appellate brief the trial court applied the wrong standard regarding a hostile working environment. However, an "appellate court reviews a trial court's grant of summary judgment independently and without deference to the trial court's determination." Roseman v. Owen (Sept. 21, 2000), Franklin App. No. 99AP-871, unreported. Therefore, unless the appealing party can demonstrate that summary judgment would not have been granted if the trial court had applied the proper standard, the trial court's decision will be affirmed even if the trial court applied the wrong standard. In the present case, appellant has failed to do this. Accordingly, appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error the trial court made improper findings of fact and weighed inferences against appellant on material issues regarding his retaliation claim. Appellant contends the evidence in the record supports his retaliation claim.
In order to establish a prima facie case of retaliation under R.C.4112.02(I), a plaintiff must prove the following elements: (1) plaintiff engaged in a protected activity; (2) the employer knew of plaintiff's participation in the protected activity; (3) the employer engaged in retaliatory conduct; and (4) a causal link exists between the protected activity and the adverse action. Carney v. Cleveland Hts.-Univ. Hts. City School Dist. (2001), 143 Ohio App.3d 415, 428. An employee who complains of racial harassment may have a retaliation claim pursuant to R.C. Chapter 4112 if the employee was "discharged * * * in retaliation for * * * complaints of racial harassment." Ridgill v. Little Forest Med. Ctr. (June 28, 2000), Summit App. No. 19501, unreported. Once the employee presents evidence of a prima facie case of discrimination, the burden shifts to the employer to "articulate some legitimate nondiscriminatory reason for" the employer's action. Carney, supra, at 429, quoting Texas Dept. of Community Affairs v. Burdine (1981),450 U.S. 248, 252-253, 101 S.Ct. 1089, 1093.
According to appellant's complaint, the protected activity that appellant engaged in was complaining of racial harassment to Lewallen. However, a review of appellant's deposition shows appellant did not testify that he complained of racial harassment to Lewallen. Appellant only stated that Lewallen told him "if you want to keep your job, you have to shut up your mouth." When asked if he had "any other facts to support [his] claim that Dorothy Lewallen was involved in [his] termination," appellant answered "that's all." When asked whether he reported the alleged racial comments to anybody else, appellant answered "the next day I get fired." Additionally, appellant's claim of retaliation as stated in his complaint and supported by his deposition testimony is based upon appellant complaining to the person who was the originator of the harassing comments. Under this scenario, it would be difficult for appellant to establish a causal link between his engagement in a protected activity and the adverse action taken.
After appellees filed their motion for summary judgment, appellant attempted to buttress his retaliation claim by submitting an affidavit. According to appellant's affidavit, he said that he:
 * * * began reporting these [racial] remarks to Ms. Lewallen's supervisor, Judy Woodworth. I reported the racial harassment to Ms. Woodworth on approximately six (6) occasions. Ms. Woodworth totally ignored my complaints. I also reported them to Manager Jacqui Reithel who also ignored them.
Appellant claims Lewallen told him "to shut up that if I talked to her boss (Judy Woodworth) again about what she was saying that I would be fired." Appellant argues that "[b]ased upon these allegations by [appellant], there are material issues of fact as to whether or not the racial harassment was reported to [Mount Carmel's] management several times prior to his discharge."
While this scenario presents a possible causal connection between a protected activity (complaining to Woodworth and Reithel about Lewallen's alleged harassment) and the adverse action (appellant being fired), this evidence contradicts appellant's complaint and deposition testimony. "[A] non-moving party cannot defeat a motion for summary judgment by creating an issue of fact through a contradictory affidavit." Schaeffer v. Lute (Nov. 22, 1996), Lucas App. No. L-96-045, unreported. "`If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" Id., quoting Reid v. Sears Roebuck Co. (C.A.6, 1986), 790 F.2d 453, 460.
Appellant has essentially attempted to defeat appellees' motion for summary judgment by introducing a new cause of action and presenting new facts to support that cause of action. Appellant's complaint alleged a cause of action for retaliation based upon the fact that appellant "complained of racial harassment to Supervisor Lewallen." A review of appellant's deposition shows no evidence of any complaints being made to anyone concerning Lewallen's alleged comments. Appellees, relying upon appellant's complaint and deposition testimony, alleged in their motion that appellant "never complained about any alleged harassment to [Woodworth and Reithel] until after his employment was terminated. * * * As a result, [appellant] is unable to prove a critical element of a prima facie retaliation claim that Mount Carmel was aware he had engaged in protected activity (complaining about Lewallen's alleged conduct)." Allowing appellant to present a new claim of retaliation based upon evidence which contradicts his deposition would in effect "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Schaeffer, supra.
Accordingly, after having construed the evidence in a light most favorable to appellant, we find the trial court did not err when it granted appellees' motion for summary judgment for appellant's retaliation claim. Appellant failed to present sufficient evidence to show a causal link existed between his complaint of racial harassment and his termination. Appellant's second assignment of error is overruled.
Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
PETREE, J., concurs, BRYANT, J., dissents.